THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK OLAH, Appellant.

Argued October 20, 1949; decided December 2, 1949.

*Samuel Silverman, Samuel Bonom* and *Bernice E. Silverman* for appellant. Defendant's prior conviction in New Jersey did not necessarily establish facts indicating a felony crime under the laws of our State. The judgment at bar, insofar as it imposed sentence on him as a second felony offender, and the order denying the motion to resentence defendant as a first felony offender were erroneous. (*Matter of Cedar,* 240 App. Div. 182, 265 N. Y. 620; *People ex rel. Newman* v. *Foster,* 297 N. Y. 27.)

*Frank S. Hogan, District Attorney* (*Whitman Knapp* and *Edwin C. Hoyt, Jr.,* of counsel), for respondent. In determining whether acts committed in a foreign State would have been felonious if committed in this State reference may be had only to the '' operative and material facts '' set forth in the foreign indictment. The taking of two $100 bills was not among the facts necessary to the New Jersey conviction. (*People ex rel. Newman* v. *Foster,* 297 N. Y. 27.)

*Nathaniel L. Goldstein, Attorney-General* (*Herman N. Harcourt* and *Wendell P. Brown* of counsel), *amicus curiæ,* for affirmance. Appellant's previous conviction in New Jersey required that he be sentenced as a second offender upon his conviction of a felony in New York. (*People ex rel. Newman* v. *Foster,* 297 N. Y. 27.)

FULD, J. Treated by the Court of General Sessions of New York County as a second felony offender, the defendant Olah challenges the validity of the sentence imposed upon him. The Appellate Division, two justices dissenting, upheld it. In this court, the District Attorney, with commendable candor, has expressed agreement with the position taken by the defendant, while the Attorney-General — appearing at the District Attorney's suggestion — has advanced the contrary view.

Section 1941 of the Penal Law provides that a defendant, convicted of a felony in New York, is to be punished as a second felony offender if he was previously " *convicted* * * * under the laws of any other state * * * *of a crime* which, if committed within this state, would be a felony ". (Emphasis supplied.) The language is plain beyond cavil: defendant is a second offender only if the " crime " of which he was " convicted " in the other jurisdiction would have amounted to a felony here.

In the present case, Olah was convicted in New Jersey following his plea of guilty to an indictment accusing him of having stolen a watch and a wallet containing $200, " all of the value of over Twenty Dollars ". He was given a suspended sentence and placed on probation.

Our problem is to determine the " crime " of which he was convicted.

Since an indictment not infrequently contains immaterial and nonessential recitals, we cannot determine the " crime " with which a defendant is charged — and, of course, of which he is convicted — by mere examination of the indictment's allegations. To ascertain that " crime ", we must of necessity consider the statute which created and defined it and upon which the indictment was based.

The indictment was founded upon a New Jersey statute which, creating the " crime " of larceny as " a high misdemeanor ", defined it as the theft of " Money, or personal goods " having a " value * * * of or above twenty dollars " (N. J. Stat. Ann., § 2:145–2). Since section 1941 of the Penal Law renders vital the " crime " of which a defendant was convicted and since the " crime " in New Jersey was that of stealing $20 or more, it follows that such a crime would not have been a felony in this State — for it is the theft of more than $100 that is here denominated a felony (Penal Law, §§ 1296, 1299).

The circumstance that Olah pleaded guilty to an indictment which recited that the items stolen were worth over $200 is entirely immaterial insofar as section 1941 is concerned. It is the statute upon which the indictment was drawn that necessarily defines and measures the crime. There is a difference between the " crime " of which a defendant was convicted and

the " evidence " relied upon to establish that crime. And, by the same token, there is a difference between the " crime " of which he was convicted and the " act " which he may have committed. In other words, the crime, i.e., the operative facts which constitute the criminal offense as defined by the statute, cannot be extended or enlarged by allegations in the indictment or by evidence at the trial. Expressed somewhat differently, facts not specified in the statute upon which the indictment is based may not be rendered material or operative by merely stating them in the indictment — and that is forcefully borne out by the rationale and implications of our holding in *People ex rel. Newman* v. *Foster,* 297 N. Y. 27.

In the *Newman* case, the defendant had committed acts which were a matter of public record, acts which would undoubtedly have been sufficient to subject him to conviction of a felony had he been tried in New York. He was convicted in New Jersey of the crime of carrying a concealed weapon — a felony in this State if he had " been previously convicted of any crime " (Penal Law, § 1897, subd. 5). Since he had been previously convicted at the time he was adjudged guilty of carrying a concealed weapon, his " act ", if prosecuted in New York, would have constituted a felony. We held, nevertheless, that the defendant had not been convicted of the " crime " of carrying a concealed weapon after prior conviction because that was not the " crime " charged against him in New Jersey. Accordingly, we concluded, that conviction was not to be counted in considering defendant Newman's status under section 1942 of the Penal Law. The difference between the *Newman* case and the present one is exceedingly slight. If the New Jersey indictment had alleged — what was indisputable — that Newman had been previously convicted of a crime, that case would have been indistinguishable from the one before us. Yet it is clear from what we wrote in the *Newman* case that the addition of such a recital in the New Jersey indictment would not have changed the result. The principle implicit in the *Newman* case is that a " crime " is to be measured and limited by the statute which defines it, and, indeed, that thought was expressed in our opinion. Thus, we not only declared that " the court is restricted to consideration of the operative and material facts " set forth in the

indictment (297 N. Y., at p. 30), but, adverting to the possibility of an allegation of some fact or item which was not required by the operative statute, we said (p. 30): " The information, to which relator pleaded guilty in the New Jersey court, alleged only the carrying of a concealed revolver and, indeed, *any further recital would have been immaterial, surplusage under the statute.*" (Emphasis supplied.)

It is self-evident that, under a statute such as the one upon which the indictment against Olah was based, the amount stolen, the value of property taken, is of no consequence whatsoever once a defendant admits that he misappropriated $20. We can test this by supposing that Olah, instead of pleading guilty, had been convicted after trial, his plea of guilty replaced by its equivalent, a jury's verdict. What would that verdict have signified? The prosecution would not have had to prove that Olah had stolen a watch and a wallet containing $200; Olah would not have been entitled to an acquittal if he had stolen less than $200 or even less than $100. (See, e.g., *People* v. *McCallam*, 103 N. Y. 587; see, also, 2 Bishop, New Criminal Procedure, § 488b, subd. 2.) As the trial court would in such a case instruct, the jury would be warranted in adjudging Olah guilty of the crime charged if it found that he had stolen $20 or more. (See, e.g., *People* v. *McCallam, supra.*) Obviously, then, had there been a trial, the verdict — and the ensuing judgment — would have signified only (1) that Olah had stolen money or property and (2) that the amount involved was at least $20. (See *Karameros* v. *Luther*, 279 N. Y. 87, 91; *Donahue* v. *New York Life Ins. Co.*, 259 N. Y. 98, 102; *The Evergreens* v. *Nunan,* 141 F. 2d 927, 929.) As this court declared in the *Donahue* case (259 N. Y., at p. 102): " although a decision, in express terms, professes to affirm a particular fact, yet, if that fact was immaterial to the issue and the controversy did not turn upon it, the decision will not conclude the parties in reference to such fact."

The " crime " of which a defendant is convicted remains the same whether a trial was had or a plea of guilty was entered. A plea simply avoids the necessity and expense of a trial, and a defendant is not to be prejudiced, is not to be placed in a different or worse position, by entering a guilty plea. Once having admitted a theft of at least $20, Olah had no interest in attempting to show that what he stole was valued at less than $200 — for

nothing would or could turn on such an evaluation. He did not have in mind the thought or the possibility that section 1941 of the Penal Law of New York State might later be invoked against him or that it might be important to know whether he stole more or less than $100. When prosecuted in New Jersey, he was concerned only with the crime then and there charged against him, and it impresses us as unfair now to construe his plea as an admission that he was guilty of a " crime " more broad than that defined in the statute under which he was convicted.

The indictment against Olah would have been valid and sufficient had it merely charged him with " the theft of a watch, a wallet and United States currency, all of an aggregate value of $20 or more." Concededly, had the indictment been phrased in that way, there would now be no question that defendant could not be considered a second felony offender in this State. The application of section 1941 cannot be made to turn upon the expansiveness of the prosecutor who prepared and drafted the indictment in the other State. One prosecutor may content himself with pleading only essential allegations, while another may choose to include immaterial and surplus recitals. Liberty — even of habitual malefactors — is too important to depend upon the drafting technique or the pleading preference of a particular official.

While there is language in some opinions that it is only the foreign judgment of conviction and the indictment upon which it was predicated that must be considered in applying section 1941, such language must be read in context and in the light of the issues presented. So we have announced on innumerable occasions; typical is this statement from *Dougherty* v. *Equitable Life Assur. Soc.* (266 N. Y. 71, 88): " No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence is to be taken as a rule of law separate from its association."

No purpose is to be served by treating the several cases which have been called to our attention. It is sufficient to say that this is the first time that the question here posed has ever been raised or considered. In not a single case did this court or — so far as we have been able to ascertain — any other court give thought to the problem. And, certainly, the Court of Appeals never said

that a defendant was to be stamped a second or fourth offender on the basis of allegations in an indictment which were uncalled for and immaterial under a foreign statute.

On the contrary, as noted above, our most recent decision — *People ex rel. Newman* v. *Foster* (297 N. Y. 27, *supra*) — strongly suggests just the opposite. In that case, the indictment itself revealed that the " acts " charged against Newman in New Jersey could not have been a felony in this State. Consequently, there was no need or reason to go behind the indictment to perceive that the defendant had not been convicted of a crime that would have here been a felony, and we were not called upon to examine the New Jersey statute. But we were careful to say, first, that " the court is restricted to consideration of the operative and material facts " set forth in the indictment and, second, that any recital in the indictment beyond what was provided in the foreign statute would be " immaterial [and] surplusage " (p. 30). Here was the clearest kind of indication that only allegations of operative and material fact were significant in evaluating the " crime " of which the defendant had been convicted.

A statute must be construed and applied as it is written by the Legislature, not as some judges may believe it should have been written. (See *Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634, 639.) As it now reads, section 1941 of the Penal Law does not provide that a defendant should be treated as a second felony offender if he did something in another State which might furnish the basis for a felony prosecution in New York or — relating the problem to larceny cases — if he stole an amount which might justify a prosecution for grand larceny in this State. The Legislature, if it is so minded, may amend the statute and make a defendant's second or fourth offender status depend upon some other criterion than the " crime " of which he was convicted, but, until the Legislature does so, the prosecutors and the courts in this State must consider and look only to that " crime."

The orders should be reversed and the matter remitted to the Court of General Sessions, with directions to vacate and set aside the judgment of conviction and to take such further proceedings as may be necessary, not inconsistent with this opinion.

CONWAY, J. (dissenting). There is presented a matter of statutory construction. Section 1941 of the Penal Law provides for additional punishment, to a degree therein stated, for a person who commits any felony within this State " after having been once or twice convicted within this state, of a felony, of an attempt to commit a felony, or, under the laws of any other state, government, or country, of a crime which, if committed within this state, would be a felony ".

The statute has remained substantially the same since the adoption of our Penal Code in 1881 (L. 1881, ch. 676) nearly seventy years ago. That in turn was a re-enactment of the original statute in this State making similar provision (L. 1823, ch. CLX, § VI) more than 125 years ago, as follows: " *And be it further enacted,* That a former conviction in any of the United States, for any offence punishable by the laws of this state, by imprisonment in the state prisons, shall be considered as a former conviction within the meaning of this act, and of all former acts imposing an increase of punishment for the commission of a second offence."

We now turn to the facts of our case to which the statute is to be applied. Last year the defendant pleaded guilty to a felony in the Court of General Sessions. Although accused of stealing various sums ranging from $2,000 to $8,600 from one who had obtained settlement of a personal injury action for the loss of his leg, it appeared that the larceny was approximately $6,000. The District Attorney of New York County thereupon filed an appropriate information alleging that the defendant Olah had been convicted in New Jersey in 1933, of the crime of grand larceny " which said crime would then be felonious if and as committed within this State ". We have quoted from the information of the District Attorney since he quite evidently construed section 1941 in accordance with the decisions of this court. The defendant admitted that he was the one convicted in New Jersey and was sentenced thereupon to a term of imprisonment of not less than five nor more than seven years. Thereafter he moved to vacate the judgment upon the ground that the crime of which he was convicted in New Jersey would not be a felony if committed in this State.

The charge against the defendant in New Jersey was that he there stole, took and carried away, contrary to statute: " One

(1) Wallet, containing Two (2) One Hundred Dollar Bills, One (1) Elgin Open-face Gold Watch, with broken chain attached — 17 Jewel, all of the value of over Twenty Dollars of the goods and chattels of Edward Stahl * * *." To that accusation the defendant Olah pleaded guilty.

The contention of the defendant is that all the allegations just quoted are surplusage save only the conclusory one: " all of the value of over Twenty Dollars ". The basis for this curious construction is that the line of demarcation between petit larceny (a misdemeanor) and grand larceny (a felony) in New York State is fixed at $100 (Penal Law, § 1296) while in New Jersey it is fixed at $20. (N. J. Stat. Ann., § 2:145–2.) We have already quoted our statute (§ 1941) which provides that a man shall be sentenced as a second offender if he has previously committed a crime under the laws of another State, which, if committed here, would be a felony. Olah committed a felony under the New Jersey statute. That is conceded. He pleaded guilty to stealing a wallet and two $100 bills. That was the larceny of more than $100. By the proposed construction it is not. It is the larceny only of property of more than $20 — all else in the indictment is surplusage. It is conceded that, under that construction, no one may ever be convicted in this State as a second offender for a felony larceny committed in New Jersey. It is conceded that that is true although in New Jersey the larceny alleged might be of $1,000,000 in cash and the accused admitted it. That, it is said, is because in New Jersey the line of demarcation between felony and misdemeanor has been set by the Legislature there at a lower figure than $100. It is clear that the law in New Jersey is more severe than in our State. In New Jersey the larceny of $21 is a felony. Yet it is contended that because the law is more severe in New Jersey, the defendant must be dealt with more lightly in New York. Thus, a prior foreign State conviction of the theft of goods or money of any value, however great, may never be used under sections 1941–1943 of the Penal Law when the statute of the foreign State has adopted a value of less than $100 as the dividing line between felony and misdemeanor. This is serious as far as our residents are concerned since there are forty-five out of forty-eight of our States which set the dividing line at less than $100. A thief may commit one or many larcenies of thousands of dollars in any one or

several or in each of those forty-five States, be convicted there any number of times of larceny as a felony and yet still have New York State to which he may come where he will be a first offender no matter what felony he may here commit. A construction which reaches a result so unfortunate should be avoided if possible for it is clearly the opposite of the intent of our Legislature and is contrary to our practice for the last 125 years. In the construction of statutes, where the intention and purpose of the legislation is known and it is for the protection of the public, a construction should be adopted which accords with the legislative purpose rather than one which thwarts it. It should be one which accords with reason and justice. That is because it will be presumed that a construction leading to unreasonable or startling results is contrary to the intention of the legislators who participated in its enactment.

What our Legislature intended was simple: If a person were convicted of doing an act in another State which if done here would be a felony and then committed a felony here, he was to receive additional punishment because he would be considered a second offender. Our citizens require, for their protection, that there be deterring punishment provided for those persons of our own or sister States who commit a second felony here. We have approved that legislative action through the years. (*People* v. *Powers,* 6 N. Y. 50; *People* v. *Sickles,* 156 N. Y. 541; *People* v. *Gowasky,* 244 N. Y. 451.) In the latter case we said (p. 457): " No one has ever doubted the wisdom or justice of punishing a second or third offender more severely than a first offender."

That we clearly understood this simple legislative intent is evidenced by a long line of cases in our court, in the Appellate Divisions and in courts of original jurisdiction, in which it has been held that in determining whether a defendant was guilty in another State of acts which, if committed here, would constitute a felony, our courts must look only to the foreign judgment of conviction and the indictment or information upon which it was predicated. Nowhere were the holdings in those cases more clearly summed up than in *People ex rel. Newman* v. *Foster* (297 N. Y. 27, 30 [1947], FULD, J.) as follows: " Whether the *acts* committed in the foreign jurisdiction would be felonious if committed within this State, depends, of course, upon New York law. What those *acts* were, however, is to be determined by

reference *only* to the foreign judgment of conviction and the *indictment* or *information* upon which it was predicated, and the court is restricted to consideration of the operative and material facts *therein set forth.* (See *People* v. *Voelker,* 222 App. Div. 717; see, also, *People* v. *Wicklem,* 183 Misc. 639, 642; *People* v. *Dacey,* 166 Misc. 827, 836–837.) To permit proof of *facts different from those alleged* would lead only to abuse and to impossibility of administration. (See *Matter of Emert* v. *Thorn,* 249 App. Div. 301; *People* v. *Wicklem, supra; People* v. *Dacey, supra.*) '' (Emphasis supplied.) We need not examine the cases cited for it has not been claimed that they do not with exactitude demonstrate the accuracy of each and every factor in the quoted portion of the opinion nor indeed is it claimed that those statements of law are incorrect or the result of error. To the cases thus cited should be added (1) *People* v. *Cohen* (270 N. Y. 528) where the sole test we applied was that the defendant had pleaded guilty in Illinois to obtaining $7,200 by the crime of confidence game, (2) *People* v. *Daiboch* (265 N. Y. 125), where we noted (p. 128) that the defendant '' was found to be the person previously adjudged in New Jersey to be guilty of the crime of defrauding the Mutual Bank of Roseville, N. J., by a false check of one thousand dollars, a felony in this State * * *.'' It was a misdemeanor in New Jersey. (N. J. Compiled Stat. of 1910, p. 1800, § 186.) We quoted section 1941 in part and then said (p. 129): '' The defendant came within this section and was properly sentenced as a second offender.'' (3) *People ex rel. Cox* v. *Wilson* (281 N. Y. 712) where defendant had been sentenced as a second felony offender because he had pleaded guilty in Pennsylvania to forging an indorsement on a check. That act constituted a felony in New York but a misdemeanor in Pennsylvania. (4) *Matter of Cedar* v. *Judges of Court of General Sessions* (240 App. Div. 182, affd. 265 N. Y. 620) where a prisoner had been sentenced as a fourth offender. One of the felonies proved had been one in Pennsylvania for obtaining $400 by false pretenses. That was a misdemeanor in Pennsylvania. After his sentence as a fourth offender, the Pennsylvania court amended the indictment to make the accusation one of obtaining $35 only, which was a misdemeanor in New York. We **refused to go back of** *the acts* alleged in the original indictment.

We have construed the legislative intent in enacting section 1941 and its predecessor statutes for 125 years. Courts and public officers have followed that construction. There are other statutes which have been similarly construed (Penal Law, § 1942; Correction Law, §§ 219, 242). We should not now suddenly alter our construction which has been approved by the Legislature over the years, for it has amended the applicable statutes many times without questioning our construction. The amendments during the last thirty years have been by Laws of 1920, chapter 571; Laws of 1926, chapter 457; Laws of 1936, chapters 70 and 328, and Laws of 1942, chapter 700. The majority asserts that this is the first time the question posed has ever been raised or considered in 125 years. We think that is clearly incorrect. We have pointed to the authorities in this and other courts up to and including *People ex rel. Newman* v. *Foster* (*supra*), wherein a long line of distinguished judges considered the question and determined that the *only* test for us was the *acts* of the accused in the foreign State. We have thus considered and answered the question posed many times and the Legislature has many times approved our answer.

The orders should be affirmed.

LOUGHRAN, Ch. J., DESMOND and BROMLEY, JJ., concur with FULD, J.; CONWAY, J., dissents in opinion in which LEWIS and DYE, JJ., concur.

Orders reversed, etc.