In the Matter of ALBERT KAYTES, Petitioner, against EDWARD J. DONOVAN, as Commissioner of New York State Department of Correction, Respondent.

Supreme Court, Special Term, Albany County, August 26, 1952.

*Albert Kaytes,* petitioner in person.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Herman N. Harcourt* and *Richard H. Shepp* of counsel), for respondent.

BOOKSTEIN, J. Petitioner was convicted in this State of the crime of manslaughter, first degree, a felony, and sentenced on April 28, 1938, to a term of from five to ten years. He was received in a State prison on April 29, 1938, with a credit of seven months and seventeen days jail time. On January 22, 1942, he was paroled and subsequently was inducted into the armed forces of the United States. On or about November 29, 1943, he deserted the armed forces and on or about said date, as was its right, under section 218 of the Correction Law of this State, the New York State Board of Parole declared him delinquent, as of November 29, 1943. However, he was not apprehended until sometime in February, 1945, when he was arrested in the State of California on suspicion of forgery and was turned over to the army authorities. He was prosecuted by a court-martial on two charges, viz., violation of the 58th Article of War, which dealt with desertion, and is not here germane, and violation of the 93d Article of War, which dealt with certain crimes. The trial by the court-martial was held in California and on April 27, 1945, petitioner was convicted by it on both charges and sentence was on that day adjudged. With respect to the latter violation, the specification charged in detail, but without mentioning the applicable statute of Nevada, the commission of a forgery at Reno, Nevada, on January 23, 1945, by forging an indorsement on a check drawn by a private corporation on its bank.

Upon his discharge from service of the sentence imposed upon him by the court-martial, he was turned over to the New York State authorities and returned to prison.

An act, other than a felony, which constitutes a violation of parole, is treated differently from a crime which would constitute a felony in this State. In the former case, the offender, under section 218 of the Correction Law as it existed when petitioner was convicted by the court-martial, could be required to serve the balance of the unexpired term remaining, *after he was declared a delinquent.*

When a parolee was convicted of a crime in another State, which would have constituted a felony in this State, then section 219 of the Correction Law governed. Under the latter section, as it existed when petitioner was convicted by the court-martial, there was no discretion vested in any board or body. The conviction for a felony in this State or of a crime in another State or country, which constituted a felony in this State, *compelled the offender to serve the balance of the unexpired term remaining at the time of his release on parole.*

Thus it may be seen that the case of a parole violator, whose violation did not constitute a felony in this State, *or of a conviction of a crime in another State which would not have constituted a felony here,* was accorded entirely different treatment than was the case of a parole violator, convicted of a felony in this State or of a crime in another State which would have constituted a felony in this State. In the former case, there had to be a declaration of delinquency; the alleged violator had to be accorded a hearing; the parole board was vested with discretion as to what portion, if any, of the unexpired term of the sentence, from the service of which, the violator was paroled, he would be required to serve, except that the maximum of such time could be no more than the balance of the unexpired term, *remaining after the delinquency*; in the latter case, service of the balance of the maximum term remaining at the time of parole was mandatory.

It is petitioner's contention that he was a parole violator only within the meaning of section 218 of the Correction Law, in which event the period of his incarceration, under his New York State conviction expires on August 27, 1952, and, if his contention is correct, he must be discharged on that date. The respondent contends that petitioner was a parole violator under section 219 of the Correction Law, in that, while on parole, he committed a crime in another State, which, if committed here, would have been a felony, and if such contention is correct, then the period of petitioner's incarceration expires on *July 4, 1954.*

Thus the question to be determined is whether petitioner's conviction by the court-martial was a conviction of a crime, which, if committed in this State, would have constituted a felony or not.

The Articles of War, as they existed at the time of petitioner's conviction, were contained in chapter 36 of title 10 of the United States Code. By article 12 thereof, which was contained in section 1483 of title 10 of the United States Code it was provided that: " General courts martial shall have power to try any person subject to military law for any crime or offense made punishable by these articles ".

Persons subject to military law were enumerated in article 2 of the Articles of War, then contained in section 1473 of title 10 of the United States Code and there is no dispute that petitioner was a person subject to military law at the time of his conviction by a court-martial.

A proceeding thereunder was initiated by a charge and a specification of the charge. (Cf. the then article 40 of the Articles of War, U. S. Code, tit. 10, § 1511.)

As I view it, therefore, the charge and specification before a court-martial, taken together are the counterpart of the indictment of a grand jury in a civil tribunal. And in order to determine the *crime charged,* both the charge and the specification are to be considered. Here the specification shows that the crime charged was a forgery under the laws of Nevada. (Nevada Compiled Laws, 1929, § 10350. *What Acts Considered Forgery,* § 398.) The specification alleged the forgery to have been committed at Reno, Nevada. While petitioner was tried in California, under section 470 of whose Penal Code the facts set forth in the specification constituted a forgery, that fact cannot be considered. The place where the crime was committed determines its nature and not the place where the trial was held. While a court-martial could sit anywhere, the question of whether a crime had been committed against a State law, had to be determined by the laws of the State where the alleged offense was committed and not by the laws of the State where petitioner was tried. The State of California could not have prosecuted petitioner for the forgery. It was not committed there and the fact that the court-martial sat in California, did not make the California statute on forgery applicable.

Article 93 of the Articles of War, as it existed at the time the petitioner was convicted of its violation, constituted section 1565 of chapter 36 of title 10 of the United States Code and provided as follows: " Any person subject to military law who commits manslaughter, mayhem, arson, burglary, housebreaking, robbery, larceny, embezzlement, perjury, *forgery,* sodomy, assault with intent to commit any felony, assault with intent to do bodily harm with a dangerous weapon, instrument, or other thing, or assault with intent to do bodily harm, shall be punished as a court martial may direct ". (Italics supplied.)

Title 18 of the United States Code defines the various crimes against the United States and normally of course they must be prosecuted in the civil courts of the United States. Jurisdiction was not conferred upon a military court to prosecute *all* crimes against the United States which are defined in title 18 of the United States Code, nor all crimes against State laws. Such jurisdiction was limited to the crimes enumerated in article 93 of the Articles of War (*supra*). The forgery charge against petitioner was not a forgery under the laws of the United States. It was a forgery under the laws of Nevada. But a court-martial

had jurisdiction to try and punish one for the crime of forgery against the United States, as well as for forgery under the laws of the State where committed. (*Caldwell* v. *Parker*, 252 U. S. 376.)

Strictly speaking, article 93 of the Articles of War (*supra*) was not definitive and did not *create, establish or define any crimes*. Rather, it conferred jurisdiction upon a court-martial to try persons in military service for certain crimes therein enumerated and to fix the punishment therefor. So, also strictly speaking, there was no such thing as a violation of the 93d Article of War. Rather, that article meant that if a person in military service committed one of the crimes therein enumerated, then he could be tried by a court-martial for the commission of such crime. Some of the crimes therein enumerated constituted felonies in this State; others, misdemeanors.

It must be borne in mind also that a court-martial procedure was not by indictment. Unlike the procedure in the civil courts by way of indictment, or, as in some States, by way of an information, under the Articles of War, it was by way of a charge and specification. "It is not necessary that the charge in court martial proceedings should be framed with the technical precision of a common-law indictment, and we cannot doubt that the one in this case clearly shows jurisdiction in the court over the accused and over the offense with which he was charged, and that the latter was sufficiently described to advise defendant of the time and place and circumstances under which it was claimed he had committed the crime, to enable him to make any defense he may have had." (*Collins* v. *McDonald*, 258 U. S. 416, 420.) The same can be said with equal force as to the charge and specification in the instant case.

Prior to instituting this proceeding, petitioner had instituted habeas corpus proceedings before another Justice of this court. In that proceeding, petitioner's contention was sustained but the writ was dismissed on the ground that the proceeding was premature, since, even if petitioner's contention were correct, he could not have been discharged until August 27, 1952. The determination in that proceeding quite naturally complicates the problem now presented, since it sustained plaintiffs' contention. Such a determination in the habeas corpus proceeding, however, was not necessary to its determination and hence can be regarded as obiter dictum. That fact, nevertheless, does not minimize the importance which must be attached to such determination and its persuasive character. Indeed, such earlier decision has inevitably produced considerable doubt and hesi-

tation in reaching a contrary conclusion in this proceeding. The conclusion in petitioner's habeas corpus proceeding was reached on the basis of the decisions in *People* v. *Olah* (300 N. Y. 96) and in *People ex rel. Florance* v. *Fay* (109 N. Y. S. 2d 471) which latter decision was made in a case quite parallel to the instant one.

Parenthetically, the decision in *People ex rel. Florance* v. *Fay* (*supra*) seems to have proceeded also on the theory that by reason of section 220 of the Correction Law, the writ could not be granted because the full maximum term for which petitioner was sentenced had not expired. However, it does not seem to me that the application was for a discharge from parole at all, but rather a discharge on the basis of the term of imprisonment having ended.

In *People* v. *Olah* (*supra*) the crime which was the basis for the sentence as a second offender was committed in New Jersey. There the crime of larceny of which the defendant therein was convicted, was under a statute which made the stealing of property of more than $20 in value a felony. In this State the larceny had to be of property of more than $100 in value in order to have constituted a felony. (Penal Law, §§ 1296, 1297.) Although the indictment in New Jersey, in the *Olah* case, alleged facts showing the stealing of property of more than $100 in value, the crime charged was, in accordance with the New Jersey statute, the *crime of stealing more than $20,* which, as already indicated, was a felony there. Proof in that case of the stealing of $21 would have established the felony. Such proof, in this State, would not have established the commission of the crime of larceny of property of more than $100 in value and hence would not, in this State, have constituted a felony. Hence, although the detailed allegations in the indictment in New Jersey stated *facts* which would have constituted a felony in this State, the *crime* charged would not have constituted a felony in this State. The *Olah* case holds that the question of whether a conviction in another State would constitute a felony here, is determined by the *crime charged* in the indictment and the statutory definition of the foreign State of the *crime charged* and not by all of the factual allegations in the indictment.

On that basis, the crime charged in New Jersey and its statutory definition of that crime would not *necessarily* have constituted a felony in this State, since under the New Jersey statute the stealing of anything over $20 in value was a felony, while under our statute the minimum involved in a larceny, to have constituted a felony, had to be over $100 in value.

And the Court of Appeals there held that the specification of the details were not necessary allegations and it was the *crime charged* which determines whether the person convicted in the foreign State was convicted of a crime which would have constituted a felony in this State. In other words, it is not the *facts charged* which determine the question, but rather the *crime charged*.

This determination was made under section 1941 of the Penal Law which so far as pertinent reads as follows: " A person, who, after having been once * * * convicted within this state, of a felony, * * * or, under the laws of any other state * * *, *of a crime* which, if committed within this state, would be a felony, commits any felony, within this state, is punishable upon conviction of such second * * * offense, as follows ".

It is that language which was interpreted by the Court of Appeals in the *Olah* case (*supra*) and its interpretation necessarily applies to the identical language employed in section 219 of the Correction Law.

If I apprehend the decision in *People* v. *Olah* (*supra*) correctly, it means that in determining whether a crime which has been committed in another State would be a felony here, one must examine the statute creating or defining the offense and the indictment based thereon; that the acts charged in the indictment, which bring the case within the statute defining the crime, determine whether the crime charged would be a felony here, and any additional facts set forth in the indictment, which go beyond the acts required to bring the indictment within the terms of the statute proceeded under, are to be disregarded.

In *People* v. *Olah* (*supra,* p. 99 *et seq.*), the court said: " The principle implicit in the *Newman* case is that a ' crime ' is to be *measured and limited* [italics supplied] by the statute which defines it, and, indeed, that thought was expressed in our opinion. Thus, we not only declared that ' the court is restricted to consideration of the operative and material facts ' set forth in the indictment (297 N. Y. at p. 30), but, adverting to the possibility of an allegation of some fact or item which was not required by the operative statute, we said (p. 30): ' The information, to which relator pleaded guilty in the New Jersey court, alleged only the carrying of a concealed revolver and, indeed, *any further recital would have been immaterial, surplusage under the statute* ".

And again, in the *Olah* case, at page 101, the court said: " The indictment against Olah would have been valid and sufficient had it merely charged him with ' the theft of a watch, a wallet and United States currency, all of an aggregate value of $20 or more.' Concededly, had the indictment been phrased in that way, there would now be no question that the defendant could not be considered a second felony offender in this State. The application of section 1941 cannot be made to turn upon the expansiveness of the prosecutor who prepared and drafted the indictment in the other State. One prosecutor may content himself with pleading only essential allegations, while another may choose to include immaterial and surplus recitals.''

The heart of the decision in the *Olah* case is that in order to determine whether a person, who was convicted of crime in another State, was convicted of a crime which would constitute a felony in this State, only the operative facts which are necessary to be pleaded to charge the crime which the statute defines are to be considered; and no resort can be had to facts therein alleged which go beyond the operative and material facts.

By that standard, in this case regarding only the operative and material facts, the specification charged the crime of forgery defined in the Nevada statute; and the crime, thus charged, constituted a felony in this State.

In *People ex rel. Stewart* v. *Wilson* (257 App. Div. 555, motion for leave to appeal denied 281 N. Y. 888) the petitioner had been convicted of sodomy by a court-martial of the United States Army and, accordingly, upon a subsequent conviction in this State of the crime of attempting to commit burglary in the third degree, was sentenced as a second offender, pursuant to section 1941 of the Penal Law. There the court states (pp. 555–556): " Appellant urges that a conviction by a court-martial of the United States is not such a conviction as comes within the purview of section 1941 of the Penal Law because in such court there is no indictment, the court is composed of army officers instead of persons skilled in the law and appeals from its determinations are greatly restricted. We see no merit in these contentions. The military courts are lawful tribunals. The previous conviction here was by a court of competent jurisdiction established by the Federal Government for a crime which if committed within this State would be a felony. The conviction is no less valid because of differences of procedure.'' (See, also, *People ex rel. Stewart* v. *Hunt,* 285 N. Y. 536, and *People ex rel. Stewart* v. *Martin,* 295 N. Y. 940.)

It is the opinion of this court that the purport of the decision in *People* v. *Olah* (*supra*) has been misapprehended in the habeas corpus proceeding of this petitioner and in *People ex rel. Florance* v. *Fay* (*supra*).

Applying the rule laid down in the case of *People* v. *Olah* (*supra*) to this case, we have the following situation: A court-martial had jurisdiction of the crime of forgery, whether committed under Federal or State law; the proceedings in a court-martial were not subject to the same technical procedure as in the prosecution of crime under State law; that no indictment was required; that the *crime charged* must be determined from both *the charge and the specifications*; that the factual charges in the specifications clearly showed and alleged the crime of forgery, under the laws of Nevada, where the acts were alleged to have been committed; that the crime of forgery charged, was a felony under the laws of the State of Nevada; that the crime of which petitioner was convicted, was the crime of forgery under the laws of Nevada; that, accordingly, petitioner was *charged with* and *convicted of* the crime of forgery in Nevada, which constituted the crime of forgery in this State, to the extent that such crime was a felony in this State; that petitioner was charged with and convicted of a crime, while on parole, which constituted a felony in this State, if committed here; that, therefore, petitioner is subject to section 219 and not to section 218 of the Correction Law; and that his term expires July 4, 1954, rather than August 27, 1952.

The determination in *People ex rel. Florance* v. *Fay* (*supra*) upon which the decision in favor of this petitioner in his habeas corpus proceeding, was predicated, was made basically upon the fact that the 93d Article of War specified crimes, which are both misdemeanors as well as felonies and that a conviction of the violation of said article did not therefore necessarily *charge* a crime which, in this State, would constitute a felony, which view, if correct, would be sustained by the decision in *People* v. *Olah* (*supra*). In my view, however, petitioner was not convicted of a violation of the 93d Article of War. Indeed, I cannot see how there could have been a conviction of a violation of that article. As already stated, that article did not create, establish or define crimes. It is not a definitive statute. It merely *conferred jurisdiction* to hear and determine the question of guilt of certain crimes therein enumerated, whether Federal or State and to impose punishment therefor; that the actual crime charged was that stated in the specification; that the crime thus stated was a felony under the laws of Nevada where it was committed; that

the *crime charged* would have been a felony under the laws of this State (Penal Law, § 887); and that, hence, petitioner is subject to the provisions of section 219, rather than 218 of the Correction Law; and that such a determination is entirely within the letter and spirit of the determination in *People* v. *Olah* (*supra*) and is in nowise contrary thereto.

*People* v. *Gailhard* (278 App. Div. 712) is patently not in point, since the Pennsylvania statute there involved made any larceny, *regardless of amount,* a felony, while the New York statute fixes a minimum of over $100 for a larceny to be a felony. Hence, under the rule of the *Olah* case, the *crime charged* was *not necessarily* a felony in this State; it could have been a misdemeanor under our law.

Nor is *People* v. *McDowell* (200 Misc. 46) an authority contrary to the conclusion here reached, for there the *crime charged* would have constituted only a misdemeanor in this State.

Petition dismissed upon the merits, without costs.

All papers to Attorney-General.