OPINION OF THE COURT
James G. Starkey, J.
The question presented in this case was whether a previous felony conviction of defendant in the State of Maryland constituted a predicate felony conviction in New York; that is, a basis for sentencing him as a second felony offender pursuant to Penal Law § 70.06 (1) (b) (i). If not, the sentence recommended by the prosecution — and agreed to by defendant— could not be lawfully imposed upon defendant for criminal sale of a controlled substance in the second degree.
Defendant urged that it is possible to violate the statute defining the crime of which he was convicted in Maryland without committing a felony in New York and that, therefore, the Maryland conviction did not constitute a predicate felony. (See, People ex rel. Goldman v Denno, 9 NY2d 138, 140 [1961].) The prosecution contended that the Maryland statute is equivalent to a comparable statute in New York, that the crimes in each instance are felonies — crimes for which imprisonment for more that one year is authorized — and that, therefore, the Maryland conviction constituted a predicate felony. After consideration of all the facts and the relevant legal principles, the conclusion was reached that defendant had not been proven to be a predicate felon under New York law and he was sentenced as a nonpredicate felon on April 28, 1994. Though the Court of Appeals has not yet considered the question, the Appellate Division, Second Department — as it turned out — reached a contrary conclusion in a similar case four days later. (See, People v Brown, 204 AD2d 343 [2d Dept 1994]; n 5, infra.) The facts and the applicable legal principles are set forth below.
*97 THE FACTS
Defendant was indicted and convicted on his plea of guilty in Montgomery County, Maryland, for distribution of a controlled dangerous substance, in violation of the Annotated Code of Maryland of 1957, article 27, § 286 (a) (1). Specifically, defendant pleaded guilty to a count charging that he, "on or about April 3, 1984, in Montgomery County, Maryland, unlawfully did distribute a controlled dangerous substance, to wit, Cocaine, in violation of Article 27, § 286 (a) (1) of the Annotated Code of Maryland”. On April 29, 1988 defendant received a suspended sentence of 20 years’ imprisonment and was placed on five years’ probation, pursuant to Annotated Code of Maryland of 1957, article 27, § 286 (b) (l).[1]
*98 LAW
A foreign conviction is a predicate felony conviction in New York when the statute underlying the foreign conviction and a comparable New York statute are equivalent as to their elements and each authorizes a sentence in excess of one year. (See, People v Muniz, 74 NY2d 464, 467-468 [1989]; People v Gonzalez, 61 NY2d 586, 589 [1984]; see also, Penal Law § 70.06 [1] [b] [i].) Generally speaking, the inquiry to determine whether the foreign conviction has an equivalent among New York’s felony-level crimes is limited to a comparison of the elements of the crimes as they are defined in the statutes of New York and the foreign jurisdiction. (See, People v Olah, 300 NY 96, 98-99 [1949]; see also, People v Muniz, supra, at 467-468; People v Gonzalez, supra, at 589.)
In certain cases, however, the inquiry may proceed beyond the foreign statute to the accusatory instrument. This may be done when the foreign statute renders criminal several different acts, some of which would constitute felonies if committed *99 in New York and others of which would constitute only misdemeanors. (See, People ex rel. Gold v Jackson, 5 NY2d 243 [1959].) In that case, defendant had been convicted of a felony under a foreign statute which classified both "breaking in” and "breaking out” as ways in which burglary — a felony— could be committed. At the time, however, New York treated only the form of the crime involving "breaking in” as a felony. In these circumstances, the Court of Appeals approved resort to the foreign accusatory instrument to establish which of the two mutually exclusive acts had been alleged and provided the basis for the foreign conviction. (See also, People v Gonzalez, supra, at 590-591; People v Muniz, supra, at 468.)
1. Contention that the Maryland statute prohibits different acts including acts which would be misdemeanors if committed in New York.
The rule permitting reference to the indictment when the foreign statute prohibits different acts — acts which would constitute both felonies and misdemeanors in New York — was fatal to defendant’s first contention. It is true that it is possible to violate the Maryland statute by distributing marihuana — conduct which is only a misdemeanor in New York. But it is also true that the indictment clearly charged defendant with distribution of cocaine, not marihuana. Further, the Maryland statute clearly divides and distinguishes the penalties for distribution of any "narcotic drug” listed in Schedule I or II from the penalties for distribution of "any other controlled dangerous substance”. (See, Md Annot Code of 1957, art 27, § 286 [b] [1], [3].) Finally, distribution of any of the narcotic drugs listed in Schedule I or II — which include cocaine, heroin, related compounds and their chemical equivalents — constitutes a felony in New York. (Compare, Md Annot Code of 1957, art 27, § 277 [q]; § 279 [a], [b]; § 286 [b] [1], with Public Health Law § 3306; Penal Law § 220.00 [1], [7]; § 220.39.) The circumstances, then, would seem a clear illustration of the rule permitting reference to the indictment. (See, People ex rel. Gold v Jackson, supra.)

2. Contention that a crucial element of the Maryland crime is different from the felony claimed to be the New York equivalent.

As noted above, the inquiry to determine whether the foreign conviction has an equivalent among New York’s felony-level crimes focuses in the first instance on a comparison of the elements of the crimes as defined in the New York and *100 foreign statutes. In that regard, the prosecution urged that New York felony-level equivalents of the Maryland crime are found in two crimes: criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance in the fifth degree. In particular, it was urged that the element in the New York statutes requiring proof of a sale and the definition of "sell” found in Penal Law § 220.00 (1) ("to sell, exchange, give or dispose of to another, or to offer or agree to do the same”) encompassed Maryland’s definition of "distribute”. Defendant, while not disputing the equivalence of other elements, urged that the definition of "distribute” in the Maryland statute is synonymous in all important respects with the term "deliver” and is different from the definition of "sell” in New York in a significant respect, i.e., it covers the "actual, constructive, or attempted transfer, exchange, or delivering of a controlled dangerous substance from one person to another with or without remuneration, whether or not there exists an agency relationship”. (Md Annot Code of 1957, art 27, § 277 [i] [emphasis added].)[2]
The prosecution conceded that the provision in the Maryland statute — which includes a person who acts as the agent of a buyer in the definition of one who "distributes” and "delivers” — varies from the definition of one who "sells” under New York law. But, citing People v Pinella (137 Misc 2d 701 [Sup Ct, NY County 1987], affd without opn 143 AD2d 1072 [1st Dept 1988]), the prosecution urged that in New York the claim that one accused of a sale acted as the agent of a buyer (and not, therefore, as a seller) is a matter of defense and, further, that matters of defense are not properly considered in determining whether a felony in a foreign jurisdiction and a felony in New York have equivalent elements.[3]
In the Pinella case (supra), a Federal statute defined the term "distribute” in terms similar to the definition of "de *101 liver” as defined in the Maryland statute in this case. The Federal statute defined "distribute” as the "actual, constructive, or attempted transfer of a controlled substance * * * whether or not there exists an agency relationship” (21 USC § 802 [8], [11] [emphasis added]). Thus, the precise issue presented here was presented in the Pinella case and resolved against the defendant.
The court there ruled that defendant Pinella was a predicate felon, noting that in order to determine whether a defendant who had pleaded guilty to such a crime could have availed himself of an agency defense if prosecuted in New York would require much conjecture and speculation and require a careful reading of the transcript in the prior proceeding. The court also observed that People v Olah (supra) "does not require an examination of what defenses might or might not have been available to a defendant in the foreign jurisdiction * * * Under Olah, the statute defines and measures the crime. Elements count; defenses, real or conjectural, do not count”. (People v Pinella, supra, at 705.)
While this court is in full accord with the foregoing comments on the law, it disagreed — most respectfully — with the conclusion reached by the court in the Pinella case (supra).[4] If, indeed, "elements count” — as they do — it was difficult to understand how an element which, by its terms, excludes the defense of agency could be viewed as the "equivalent” of "selling” as an element in New York, which does not. And, as noted above, if a "statute denominates a single act as a crime, as in People v. Olah (300 N. Y. 96), and guilt could be established by proof of an act not a felony in New York, then, the foreign conviction may not be considered a prior felony”. (People ex rel. Goldman v Denno, 9 NY2d 138, 140 [1961], supra.) In light of the above, the conclusion sought by the defendant in this case seemed inescapable: on the portion of the record concerning the Maryland conviction which could be considered here — whatever the actual facts may be — defendant could not be adjudicated a predicate felony offender.[5]
*102 The result is one which many might find unsatisfying and nettlesome — especially when it upsets a disposition sought and agreed to by defendant. But it is one which the Olah case (supra) and the applicable legal principles would seem to require. If a different conclusion is desirable and desired, appropriate action by the Legislature might ultimately be necessary. (See, People v Olah, supra, at 102.)

. The relevant sections of Annotated Code of Maryland of 1957 article 27 read as follows:
"§ 286. Unlawful manufacture, distribution, etc.; counterfeiting, etc.; manufacture, possession, etc., of certain equipment for illegal use; keeping common nuisance.
"(a) Except as authorized by this subheading, it is unlawful for any person:
"(1) To manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance * * *
"(b) Any person who violates any of the provisions of subsection (a) of this section with respect to:
"(1) A substance classified in Schedules I or II which is a narcotic drug is guilty of a felony and is subject to imprisonment for not more that 20 years, or a fine of not more than $25,000, or both * * *
"(3) Any other controlled dangerous substance classified in Schedule I, H, HI, IV, or V shall, upon conviction, be deemed guilty of a felony and sentenced to a term of imprisonment for not more than 5 years or a fine of not more than $15,000, or both. Any person who has previously been convicted under this paragraph shall be sentenced to imprisonment for not less than 2 years. The prison sentence of a person sentenced under this paragraph as a repeat offender may not be suspended to less than 2 years, and the person may be paroled during that period only in accordance with Article 31B, § 11 of the Code.”
"§ 277. Definitions.
"The following words and phrases as used in this subheading shall have the following meanings unless the context otherwise requires * * *
"(f) 'Controlled dangerous substance’ shall mean any drug, substance or immediate precursor in Schedules I through V of this subheading. The term shall not include distilled spirits, wine, malt beverages or tobacco as those terms are set in Article 2B of the Code * * *
"(i) 'Deliver’ or 'delivery’ shall mean the actual, constructive, or attempted transfer, exchange, or delivering of a controlled dangerous sub *98 stance from one person to another with or without remuneration, whether or not there exists an agency relationship * * *
"(1) 'Distribute’ shall mean to deliver * * * a controlled dangerous substance. 'Distributor’ means a person who distributes * * *
"(q) 'Narcotic drug’ shall mean any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; and which have been found to present an extreme danger to the health and welfare of the community because of their addiction-forming and addiction-sustaining liabilities:
"(i) 'Opiate’ shall mean any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having such addiction-forming or addiction-sustaining liability. It does not include, unless specifically designated as controlled under § 278 of this subheading the dextrorotatory isomer of 3-methoxy-n-methyl-morphinan and its salts (dextromethorphan).. It does include its racemic and levorotatory forms; and 'opium poppy’ which shall mean the plant of the species Papaver somniferum L., except the seeds thereof, and 'poppy straw’ which shall mean all parts, except the seeds, of the opium poppy, after mowing; and 'coca leaves’ which shall mean cocaine, its optical and geometric isomers, and any compound, manufacture, salt, derivative, mixture or preparation of coca leaves, except derivatives of coca leaves which do not contain cocaine, ecgonine or substances from which cocaine or ecgonine may be synthesized or made;
"(ii) A compound, manufacture, salt, derivative, or preparation of opium, coca leaves, or opiates;
"(iii) A substance and any compound, manufacture, salt, derivative, or preparation thereof which is chemically identical with any of the substances referred to in items (i) and (ii) of this paragraph, except that the words 'narcotic drug’ as used in this section include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine.”

. Under New York law a defendant charged with criminal sale of drugs may invoke the defense that, in obtaining and transferring drugs to a buyer, he acted solely as an agent of (and was legally identical with) the buyer and, was therefore, not a seller. If the defense is successfully raised, the defendant is not guilty of selling drugs and guilty only of unlawful possession. (See, People v Lam Lek Chong, 45 NY2d 64, 74, cert denied 439 US 935 [1978].)

. See also, People v Perkins (11 NY2d 195 [1962]), where defendant was adjudicated a predicate felon based upon a North Carolina manslaughter conviction, despite differences in the law of justification which created at least a theoretical possibility of acquittal in New York on facts requiring conviction in North Carolina.

. The general rule is that trial courts are bound by decisions of the Appellate Division — even those of a different Department. (See, Mountain View Coach Lines v Storms, 102 AD2d 663, 664-665 [2d Dept 1984].) But an affirmance without opinion has limited precedential value. (See, Tepper v Tannenbaum, 65 AD2d 359 [1st Dept 1978]; Matter of Knoll N. Am. v IBF Group, 158 Misc 2d 227, 229 [Sup Ct, NY County 1993].) In light of that principle, the circumstances presented here seemed to warrant departure from the general rule.

. But see, People v Brown (204 AD2d 343 [2d Dept 1994] [decided, as *102 noted above, on May 2, 1994 after the decision in this case had been made and after the defendant had been sentenced]), in which the court cited People v Pinella (supra) with approval. Examination of the briefs in that case makes it clear that the Appellate Division, Second Department, agrees with the Pinella rationale. That decision, of course, would have bound this court had it preceded the ruling in this case — whatever the Court of Appeals might do when, as, and if it considers the question.