THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLTON ADAMS, Appellant.

Second Department, January 14, 1991

APPEARANCES OF COUNSEL

*Philip L. Weinstein (Barry Stendig* of counsel), for appellant.

*Charles J. Hynes, District Attorney (Jay M. Cohen, Victor Barall* and *Robyn G. Nir* of counsel), for respondent.

### OPINION OF THE COURT

BALLETTA, J.

This case arises from an incident that occurred on January 12, 1985, wherein the defendant shot Police Officer James Horton as the latter tried to enter the Casino Lounge located at 351 Myrtle Avenue, Brooklyn, New York, during the course of a "buy and bust" operation. The defendant was charged under Kings County indictment number 594/85 with the crimes of attempted murder in the first degree, assault in the first degree and criminal possession of a weapon in the second degree. After a nonjury trial, he was found guilty of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree, and was sentenced as a second felony offender. The principal issues on this appeal are whether the defendant's guilt was proven beyond a reasonable doubt and whether the defendant was properly adjudicated a second felony offender based on a prior Canadian conviction.

I

■ Viewing the evidence in the light most favorable to the prosecution *(People v Contes,* 60 NY2d 620), we find that it was legally sufficient to support his conviction of attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree. The evidence shows that Officer Horton, wearing his shield around his neck, entered the dimly lit Casino Lounge and announced that he was a police officer. As two men tried to push him back out the door of the lounge, a struggle ensued in which he was shot in the hip by an unseen gunman (later established to be the defendant) who was lurking just inside the vestibule. Officer Horton was taken to Brooklyn Hospital where a bullet was removed from his small intestine and where he remained for 14 days. A week after being discharged, he was readmitted to the hospital for an additional seven days.

Dr. John Muney, a surgeon, testified that on January 12, 1985, he removed a .32 caliber bullet from Officer Horton and

repaired several holes in Officer Horton's small intestine. Dr. Muney also stated that the injuries suffered by Officer Horton were "readily capable of causing death". Subsequently, Officer Horton was forced to retire from the police force as a result of the injuries sustained in the buy and bust operation.

David McEaddy, a self-styled "professional shoplifter" who had a history of some 50 to 60 arrests for that crime and who had used approximately 20 aliases during the course of his criminal career, testified that in March 1985, while being held at Rikers Island, the defendant admitted to him that he was the unknown gunman and that he knew that he was shooting at a policeman.

The defendant contends that McEaddy's testimony was incredible. However, the resolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the finder of fact, who saw and heard the witnesses (see, People v Gaimari, 176 NY 84, 94; People v Jackson, 150 AD2d 799). The fact finder's determination should be accorded great weight on appeal and should not be disturbed unless clearly unsupported by the record (see, People v Garafolo, 44 AD2d 86, 88). Upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

McEaddy, who admittedly had received a favorable plea bargain in exchange for his testimony, testified that the defendant said he had fired three shots, intending to kill the individual who he knew was a police officer. The defendant also told McEaddy that the police had recovered his gun but he claimed that his fingerprints would not be detected on the gun because he always wrapped it in a sock. After firing the shots, the defendant ran to the back of the lounge, where he was apprehended. Although the defendant believed that the three shots had struck Officer Horton, two of the shots had actually hit one of the men pushing Horton out the door.

Detective Gerard O'Rourke testified that a .32 caliber revolver, wrapped in a sock and containing three live cartridges and three discharged shells in its cylinder, had been found in the rear yard of the lounge. This testimony corroborated McEaddy's testimony. In addition, a police ballistics expert testified that the bullets removed from Officer Horton and the man pushing him out the door were fired from the same .32 caliber weapon, further supporting McEaddy's version of the incident.

The defendant's remaining assertions to the effect that the verdict was against the weight of the evidence are all without merit.

## II

Prior to sentencing, a hearing was held pursuant to CPL 400.21 (5) to determine whether the defendant was a second felony offender. At the hearing, the People introduced a Canadian certificate of conviction establishing that on August 17, 1978, "Carlton Ansberg" was convicted of "breaking and entering with intent to commit an indictable offense therein" in Toronto, Canada, and was sentenced to a term of imprisonment of 1 day plus 12 months' probation. The People also introduced a form from the Toronto police which included a photograph of "Carlton Ansberg" and a set of his fingerprints. The defendant was identified as being the individual known to the Canadian authorities as "Carlton Ansberg", and a fingerprint expert testified that the fingerprints on the certificate of conviction were those of the defendant. The defendant's passport, which placed him in Canada on July 30, 1978, the date of the Canadian crime, was also introduced in evidence. Finally, a copy of the police arrest report, showing that "Carlton Ansberg" had been charged with breaking and entering into a jewelry store, was admitted into evidence. The court adjudicated the defendant a second felony offender, finding that the Canadian crime of which he was convicted would be a felony in New York State.

Some two years after the judgment of conviction was rendered in this case, the defendant moved, pursuant to CPL 440.20, to vacate his sentence on the grounds that his Canadian conviction did not qualify as a predicate felony pursuant to Penal Law § 70.06. He also renewed his earlier argument that the Canadian conviction was obtained in violation of his constitutional rights.

After a hearing, the defendant's motion was denied by order dated December 12, 1988. The Supreme Court, Kings County, found that the "defendant neither alleged nor proved any underlying facts to his claim of an unconstitutional conviction during the hearing". The court further held that the destruction of the Canadian sentence minutes did not lessen the defendant's burden to prove a constitutional violation. (The Canadian records were destroyed six years after the 1978 conviction pursuant to Canadian law.) The court also rejected

the defendant's argument that his Canadian conviction would not be a crime in New York, relying upon the Canadian police arrest report which indicated that "Carlton Ansberg" had burglarized a jewelry store and that such a structure would constitute a "building" pursuant to Penal Law § 140.20 (burglary in the third degree) and Penal Law § 140.00 (2).

On appeal, the defendant argues that his Canadian conviction for "breaking and entering with intent to commit an indictable offense therein" cannot serve as a basis upon which to adjudicate him a second felony offender, because the Canadian statute also proscribes conduct which would constitute a misdemeanor in New York. He also contends that the People failed to meet their burden of proving that his conviction constituted a felony in New York because they failed to produce the Canadian accusatory instrument. The defendant further asserts that neither the Canadian court nor his Canadian lawyer advised him of the ramifications of his guilty plea, and, therefore, that the Canadian conviction was obtained in violation of his constitutional rights.

The People argue that the defendant failed to preserve for appellate review his claim that the Canadian offense would not constitute a felony in New York since he did not assert at the second felony offender hearing that the elements of the Canadian statute in question were not equivalent to the elements of New York Penal Law § 140.20. The People further contend that the defendant, by failing to timely challenge the constitutionality of his Canadian plea of guilty, waived his claim on this point. They maintain that, in any event, the defendant failed to support his allegations of a constitutional problem with any evidence, as is required by CPL 400.21 (7).

### III

At the outset, it is necessary to address the People's contention that the defendant failed to preserve for appellate review his argument that the Canadian crime for which he was convicted did not constitute a felony in New York and that his conviction was unconstitutionally obtained. The People correctly assert that the aforesaid issues were not preserved for review on the direct appeal from the judgment of conviction. At the second felony offender hearing prior to sentencing in 1986 the defendant only set forth the argument that he did not commit the Canadian offense *(see, People v Oliver,* 63 NY2d 973; *People v Morales,* 143 AD2d 949; *People v*

*Tantau,* 143 AD2d 954; *People v Alston,* 134 AD2d 433). However, the defendant did raise these issues in 1988 when he moved pursuant to CPL 440.20 to vacate his sentence. Nevertheless, by failing to present any evidence in support of his bald statement that the prior Canadian conviction was unconstitutionally obtained, the defendant has waived that claim *(see,* CPL 400.21 [7] [b]; *People v Oliver, supra; People v Ubiles,* 130 AD2d 788; *People v Mumit,* 106 AD2d 411). Thus, the issue before us on the defendant's appeal from the order denying his motion to vacate the sentence is whether the crime for which he was convicted in Canada constitutes a felony in New York.

## IV

On August 17, 1978, the defendant was convicted, upon a plea of guilty, of the Canadian crime of "breaking and entering with the intent to commit an indictable offense therein". Canadian Criminal Code § 306 (now § 348) defines that crime, in pertinent part, as follows: "306. (1) Every one who (a) breaks and enters a place with intent to commit an indictable offence therein, (b) breaks and enters a place and commits an indictable offence therein, or (c) breaks out of a place after (i) committing an indictable offence therein, or (ii) entering the place with intent to commit an indictable offence therein, is guilty of an indictable offence and liable (d) to imprisonment for life, if the offence is committed in relation to a dwelling-house, or (e) to imprisonment for a term not exceeding fourteen years, if the offence is committed in relation to a place other than a dwelling-house".

The section further provides that:

"For the purposes of this section * * * 'place' means

"(a) a dwelling-house;

"(b) a building or structure or any part thereof, other than a dwelling-house;

"(c) a railway vehicle, vessel, an aircraft or a trailer; or

"(d) a pen or enclosure in which fur-bearing animals are kept in captivity for breeding or commercial purposes".

New York's Penal Law provides that: "A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20).

" 'Building,' in addition to its ordinary meaning, includes

any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein" (Penal Law § 140.00 [2]).

Penal Law § 70.06 states that:

"(b) For the purpose of determining whether a prior conviction is a predicate felony conviction the following criteria shall apply:

"(i) The conviction must have been in this state of a felony, or in any other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized and is authorized in this state irrespective of whether such sentence was imposed" (Penal Law § 70.06 [1] [b] [i]).

■■ We note first that, contrary to the defendant's argument, the court did not improperly place the burden on him to show, in connection with his CPL 440.20 motion, that the Canadian crime of which he was convicted was not the equivalent of the New York crime of burglary in the third degree. The rule is that "on an application to vacate [a sentence] the party challenging the [sentence's] validity bears the burden of coming forth with allegations sufficient to create an issue of fact (*People v Session,* 34 NY2d 254)" *(see, People v Ramsey,* 104 AD2d 388; *see also, People v Brown,* 33 AD2d 617). In any event, this argument is irrelevant since the true issue to be resolved with respect to the defendant's Canadian conviction is whether the court erred in looking past the Canadian statute and at the defendant's Canadian arrest report, once it had been determined that the Canadian crime of breaking and entering was broader than the New York crime of burglary in the third degree. We find that the court did not err in doing so.

In determining whether the defendant's Canadian conviction has an equivalent among this State's felony-level crimes, our inquiry in the first instance is limited to a comparison of the crimes' elements as they are set forth in the respective statutes *(see, People v Gonzalez,* 61 NY2d 586, 589). As recently explained by the Court of Appeals in *People v Muniz* (74 NY2d 464):* "The allegations contained in the accusatory instrument underlying the foreign conviction may ordinarily

---

* Contrary to the People's assertion, *People v Muniz* (74 NY2d 464) did not set forth a new and unexpected change in the law with respect to predicate felony offender status. Accordingly, we need not reach their argument that *People v Muniz (supra)* should not be applied retroactively.

not be considered, because such instruments frequently contain nonessential recitals *(People v Olah,* 300 NY 96, 98; *see, e.g., People v Spann,* 56 NY2d 469). Since recitals that go beyond the statutorily required elements are not necessary to the determination of guilt, there can be no assurance that such allegations played any actual part in the foreign conviction *(see, People ex rel. Goldman v Denno,* 9 NY2d 138, 142). Accordingly, resort to such recitals to ascertain the nature of the crime of which the defendant was convicted has generally been deemed improper *(see, People v Gonzalez,* 61 NY2d 586)" *(People v Muniz, supra,* at 468).

However, there is an exception to this rule under circumstances: "where the foreign statute under which the defendant was convicted renders criminal several different acts, some of which would constitute felonies and others of which would constitute only misdemeanors if committed in New York * * *. In such cases, the recitals in the accusatory instrument that describe the particular act or acts underlying the charge are necessary to the extent that they isolate and identify the statutory crime of which the defendant was accused. In such instances, the accusatory recitals are not merely surplusage, and they may properly be considered in determining whether Penal Law § 70.06 (1) (b) (i) has been satisfied *(see, People ex rel. Gold v Jackson,* 5 NY2d 243, 246)" *(People v Muniz, supra,* at 468).

In *People v Olah* (300 NY 96), the defendant had previously been convicted under a New Jersey criminal statute which defined larceny as the theft of money or property in excess of $20. The comparable New York statute set a monetary threshold of $100. Although the New Jersey indictment charged the defendant with the theft of over $200, the Court of Appeals held that it was improper to consider the indictment since the defendant could have been convicted in New Jersey regardless of the amount by which the stolen property exceeded $20. "Once having admitted a theft of at least $20, Olah had no interest in attempting to show that what he stole was valued at less than $200 * * * and it impresses us as unfair now to construe his plea as an admission that he was guilty of a 'crime' more broad than that defined in the statute under which he was convicted" *(People v Olah, supra,* at 100-101; *see also, People v Love,* 111 AD2d 134; *People v Augle,* 87 AD2d 348).

In *People ex rel. Gold v Jackson* (5 NY2d 243), on the other hand, the Florida statute under consideration made it a felony

(1) to break and enter a building with the intent to commit a felony therein, or (2) to break out of a building having entered with the intent to commit a crime therein. The former act would have constituted the crime of burglary in the third degree, a felony in New York, while the latter would only have constituted a misdemeanor in New York. Since the Florida statute "describe[d] two separate, distinct and different criminal acts", the Court of Appeals approved resort to the Florida accusatory instrument which had charged the defendant with "unlawfully and feloniously enter[ing] a dwelling in Miami with intent to commit a felony" *(People ex rel. Gold v Jackson, supra,* at 245, 246).

However, it should be noted that while *People ex rel. Gold v Jackson (supra)* allows one to refer to the allegations of the accusatory instrument "when necessary to clarify the statutory charge, [or] to limit or narrow the basis for the conviction, [it] may not be used to enlarge or expand the crime charged" *(People v Gonzalez,* 61 NY2d 586, 591, *supra; see also, People v Benjamin,* 7 AD2d 410, 413, *affd* 8 NY2d 812, *cert denied* 364 US 866).

In the case of *People v Muniz (supra),* the defendant pleaded guilty to burglary in the second degree and was adjudicated a second felony offender on the basis of a prior New Jersey burglary conviction. The accusatory instrument filed against him in New Jersey alleged that the defendant "had 'committed] an act of burglary by breaking and entering [certain premises] * * * with the intent to commit a theft' " *(People v Muniz,* 74 NY2d 464, 466, *supra).* The New Jersey statute under which the defendant had been convicted required one to enter certain premises with an intent to commit any "offense", while the New York burglary statute required an intent to commit a "crime". New Jersey's definition of "offense" included all acts that were subject to punishment in that State, including some that were the equivalent of petty offenses or violations in New York. In contrast, the term "crime", as defined in the New York Penal Law, encompasses only felonies and misdemeanors. The Court of Appeals determined that it was, therefore, possible to violate the New Jersey statute by acting with the intent to commit a petty offense without necessarily acting with the level of intent required for a felony in New York. Under these circumstances, the court held that it was improper to refer to the New Jersey accusatory instrument in determining whether the New Jersey crime would have been a felony in New York.

However, unlike the New Jersey statute in *People v Muniz (supra)*, the Canadian crime of breaking and entering, as set forth in Canadian Criminal Code § 306, "could be committed in several different, alternative ways, some of which would constitute felonies if committed in New York and others of which would constitute only misdemeanors" *(see, People v Muniz, supra,* at 470). Indeed, the situation in the instant case is remarkably similar to that found in *People ex rel. Gold v Jackson (supra)*.

Here the foreign statute labels as criminal at least two separate and distinct acts: (1) breaking into, and (2) breaking out of a place. Moreover, unlike the situations in *People v Olah (supra)* or *People v Muniz (supra)*, we are not looking at the accusatory instrument in order "to enlarge or expand the crime charged" *(People v Gonzalez, supra,* at 591). Nor are we unfairly construing the defendant's plea of guilty in Canada "as an admission that he was guilty of a 'crime' more broad than that defined in the statute under which he was convicted" *(People v Olah, supra,* at 101). Rather, we are examining "the essential operative allegations comprising the charges actually preferred against the defendant in the indictment, information, or specification in order to ascertain with precision the elements of the crime of which he has been convicted" *(People v Benjamin, supra,* at 413). Thus, the court could look to the accusatory instrument to ascertain the specific criminal act committed by the defendant. Since the Canadian arrest report, which is analogous to an accusatory instrument, indicated that the defendant broke into a jewelry store and that is the crime for which he was convicted in Canada, the court properly relied on this document in sentencing the defendant as a second felony offender *(see, People v Ross,* 140 AD2d 555; *People v Brown,* 102 AD2d 894; *People v Markus,* 7 AD2d 997).

## V

Although we have already stated that the defendant has failed to preserve for appellate review his contention that his Canadian conviction was unconstitutionally obtained, we would note that, in any event, he failed to prove that the the conviction was constitutionally defective.

It is settled that a conviction obtained in violation of one's constitutional rights may not be used to enhance punishment for another offense *(see, Burgett v Texas,* 389 US 109, 115). Moreover, "[T]he People [have] the burden of proving beyond

a reasonable doubt the existence of [a] previous felony conviction (CPL 400.21, subd 7, par [a]), but not its constitutionality. Once the fact of the prior conviction has been established, it is then incumbent upon the defendant to allege and prove the facts underlying the claim that the conviction was unconstitutionally obtained (CPL 400.21, subd 7, par [b])" *(see, People v Harris,* 61 NY2d 9, 15).

The affidavits submitted in support of the motion were insufficient to demonstrate that the defendant did not knowingly, voluntarily and intelligently plead guilty. The defendant submitted an affidavit of a Canadian attorney who stated that Canadian courts do not inquire as to whether pleas are knowingly, voluntarily and intelligently waived where a defendant is represented by counsel. However, the affidavit did not describe the circumstances surrounding the defendant's guilty plea in this particular case. In addition, although the defendant, who was provided meaningful legal representation *(see, People v Baldi,* 54 NY2d 137), urges that his plea was unconstitutional because the Canadian court never discussed it with him, this assertion is without merit since "there is no requirement that the Judge conduct a *pro forma* inquisition in each case on the off-chance that a defendant who is adequately represented by counsel * * * may nevertheless not know what he is doing" *(People v Francis,* 38 NY2d 150, 154). Moreover, as the court correctly stated in the order denying the defendant's motion to set aside the sentence, "[t]he fact that minutes of the prior plea proceeding had been destroyed pursuant to Canadian law does not relieve defendant of his burden of offering evidence in support of his claim" *(see, People v Rivera,* 39 NY2d 519; *People v De Vorce,* 115 AD2d 553). Here, the defendant's affidavit in support of his motion merely stated that he did not recall whether the Canadian court had discussed his rights with him, without offering any evidence as to what transpired at the plea proceedings. Thus, the defendant failed to prove that his Canadian guilty plea was unconstitutionally obtained *(see, People v Brown, supra).*

## Conclusion

Accordingly, the judgment of conviction rendered November 14, 1986, and the order dated December 12, 1988, are affirmed.

SULLIVAN, J. P., EIBER and MILLER, JJ., concur.

Ordered that the judgment and the order are affirmed.