OPINION OF THE COURT
Zelda Jonas, J.
The defendant was charged under indictment number 98027 with two counts of sexual abuse in the first degree (Penal Law § 130.65), a D violent felony, and endangering the welfare of a child (Penal Law § 260.10), an A misdemeanor. On January 23, 1998, pursuant to a plea bargain agreement, the defendant pleaded guilty, under count one to the lesser charge of sexual abuse in the second degree (Penal Law § 130.60), an A misdemeanor, and under count three to endangering the welfare of a child (Penal Law § 260.10), an A misdemeanor, in satisfaction of the indictment.
On May 11, 1998, prior to sentence, the court notified the defendant that based upon his conviction for sexual abuse in the second degree and in accordance with the public notification and disclosure provisions of the New York State Sex Offender Registration Act, commonly referred to as “Megan’s Law” (Correction Law §§ 168 — 168-v), the court intended at the time of sentence to certify the defendant as a sex offender as required by Correction Law § 168-d and to assign a risk assessment level of 3 to the defendant using override provision (iv) of the Risk Assessment Guidelines and Commentary established by the Board of Examiners of Sex Offenders (Board of Examiners) pursuant to Correction Law § 168-Z (5). The defense counsel was given the opportunity to review the presentence report prepared by the Probation Department with an attached clinical assessment from Child Abuse Prevention Behavior Associates (hereinafter referred to as CAP Behavior Associates). The matter was adjourned until May 20, 1998 to allow the defendant and his counsel to “appear and be heard,” as provided for by Correction Law § 168-d (3), regarding the risk assessment determination to be made by the court at the time of sentence which was scheduled for May 28, 1998.
*962 On May 20, 1998, the defendant argued that the court could not move forward with its risk assessment determination because there was no report provided to the court by the Board of Examiners. The People opposed the application upon the ground that Correction Law § 168-d does not require a report to be prepared by the Board of Examiners since the defendant was to be sentenced by the court to probation. The court concurred, and the defendant’s application was denied in its entirety.
Defense counsel further requested an evidentiary hearing with the right to present testimony from an “expert” witness, Mr. Ken Cullen, C.S.W., a certified social worker, to assist the court in determining the appropriate risk level assessment to be imposed on the defendant. The People opposed the application stating that the testimony was unnecessary.
The Sex Offender Registration Act provides that “ [i] n making the determination, the court shall review any victim’s statement and any materials submitted by the sex offender. The court shall also allow the sex offender to appear and be heard, and inform the sex offender of his right to have counsel appointed, if necessary” (Correction Law § 168-d [3]). The statute neither expressly mentions that the offender is entitled to any formal hearing, nor does it specify the offender’s right to call witnesses. Nor does the statute set forth the burden of proof to be imposed upon the defendant or the People. In fact, the statute is silent as to whether the People even have to be present at all when the court makes its determination.
Defense counsel’s request for an evidentiary hearing begs the question as to what procedures should be followed by this court, pursuant to Correction Law § 168-d (3), to ensure that the defendant’s rights to due process under the United States Constitution and the New York Constitution are not violated.
New York’s Megan’s Law
The New York State Sex Offender Registration Act (hereinafter referred to as the Act), section 2 of Laws of 1995 (ch 192), was passed on July 25, 1995 and became effective on January 21, 1996 (Correction Law §§ 168 — 168-v). The Act was modeled after New Jersey’s “Megan’s Law”, named for seven-year-old Megan Kanka, who was raped and murdered in 1994 by a twice-convicted sex offender who lived across the street from her home.
The purpose of the Sex Offender Registration Act was regulatory (Doe v Pataki, 120 F3d 1263, 1277). It required individu *963 ais convicted of certain listed sex offenses to register with law enforcement officials, and it authorized those officials to provide the public access to the identity, whereabouts, and background of registrants depending upon a risk level assigned to the sex offender. The legislative history of the Sex Offender Registration Act, cited by the United States Court of Appeals in Doe v Pataki (supra, at 1276-1277), stated that “ ‘community notification promotes a state interest in advancing the protection of the public * * * The public is notified so that they can be [the] “eyes and ears” [of law enforcement agencies]. The public can notify the appropriate authorities if the sex offender violates any condition of the offender’s parole or probation which would enable the authorities to intervene when a releasee’s behavior begins to pose a threat to community safety. This is extremely important given the high recidivism rate many of these offenders have and the lack of scientific evidence * * * that proves treatment programs reduce sex offender recidivism. A notified community may prevent crimes with greater attention and caution.’ ” (Emphasis supplied.)
The Act requires a sex offender, who is any person convicted of a “sexual offense” listed under Correction Law § 168-a (2) or “sexually violent offense” listed under Correction Law § 168-a (3), to register with the Division of Criminal Justice Services within 10 calendar days after being discharged from incarceration, paroled (Correction Law § 168-f [1]), or placed on probation (Correction Law § 168-d [2]). Sex offenders who were already on parole or probation as of the effective date of the Act were also required to register (Correction Law § 168-g [2]). The Second Circuit of the United States Court of Appeals has held that such registration does not violate the Ex Post Facto Clause of the United States Constitution (Doe v Pataki, supra, at 1265).
The statute also created a five-member Board of Examiners of Sex Offenders appointed by the Governor which authorized the Board to develop guidelines and procedures to assess the risk of a repeat offender and the threat posed to the public safety (Correction Law § 168-Z [5]).
The Board of Examiners developed a set of “Risk Assessment Guidelines” for determining an offender’s level of notification. The Sex Offender Registration Act: Risk Assessment Guidelines and Commentary was first issued by the Board of Examiners in January of 1996 and later revised in November of 1997. The Guidelines provide a detailed, point-based system assigning numerical values to 15 risk factors placed into four different *964 categories relating to current offense, criminal history, postoffense behavior, and planned release environment. A presumptive risk level of 1 (low risk), 2 (moderate risk), or 3 (high risk) is calculated for an offender by adding up the points assigned to the offender in each category. However, the Guidelines provide that the presumptive level can be departed from and a level 3 designated if any one of four overrides is found to be present by the court. The four “overrides” that automatically result in a presumptive risk assessment level 3 are: “(i) a prior felony conviction or adjudication for a sex crime; (ii) the infliction of serious physical injury or the causing of death; (iii) a recent threat to reoffend by committing a sexual or violent crime; or (iv) a clinical assessment that the offender has a psychological, physical, or organic abnormality that decreases his ability to control impulsive sexual behavior” (Risk Assessment Guidelines and Commentary, at 3 [Nov. 1997 ed]).
Where an offender is to be sentenced to probation, notification varies depending on the numerical risk level assigned by the court in accordance with the Guidelines established by the Board (Correction Law § 168-d [3]). If the sex offender is assigned a level 1 (low risk of repeating), only notification to law enforcement agencies is authorized (Correction Law § 168-Z [6] [а] ). If the sex offender is assigned a level 2 (moderate risk of repeating), law enforcement agencies are notified and are authorized to disseminate relevant information which may include approximate address based on zip code, a photograph, and background information (including modus of operation and type of victim) to any entity with vulnerable populations (Correction Law § 168-Z [6] [b]).
If the defendant is designated a level 3 (high risk of repeating), the sex offender shall be deemed a sexually violent predator. The level of notification is the same as that for a level 2, except the law enforcement agencies may disseminate the sex offender’s exact address, and the offender is listed in the sexually violent predator subdirectory maintained by the Division of Criminal Justice Services (Correction Law § 168-Z [б] tc]).
Due Process
Both the United States Constitution and the New York Constitution provide that no person shall be deprived of life, liberty, or property without due process of law (US Const, 14th Amend, § 1; NY Const, art I, § 6). Under the Fourteenth Amendment of the United States Constitution, procedural due *965 process is a flexible concept. In determining which procedures are constitutionally required in a given situation, the United States Supreme Court has held that three factors must be balanced: (1) the nature of the private interest; (2) the risk of erroneous deprivation of that interest and the probable value of additional safeguards; and (3) the government’s interest in taking its action including the burden that any additional procedural requirement would entail (Mathews v Eldridge, 424 US 319, 334-335).
The Mathews test requires that a person be afforded notice and an opportunity to be heard (Mathews v Eldridge, supra, at 348-349), and the nature of the proceeding should be appropriate to the nature of the case (Cleveland Bd. of Educ. v Loudermill, 470 US 532, 542). What constitutes a “hearing” varies in different situations. A full evidentiary hearing is usually not required (see, supra, at 545). In. general, “something less” than a full evidentiary hearing is usually sufficient (Goss v Lopez, 419 US 565, 579). Due process is satisfied if a party is given notice and “[t]he opportunity to present reasons, either in person or in writing, why [a] proposed action should not be taken” (Cleveland Bd. of Educ. v Loudermill, supra, at 546). Notably, due process does not encompass the right to counsel in civil proceedings (supra).
In criminal proceedings, due process applies to every critical stage of a criminal proceeding necessitating not only notice and an opportunity to be heard but also invoking the defendant’s right to counsel under the Sixth Amendment of the United States Constitution as applied to the States through the Fourteenth Amendment (US Const 4th, 14th Amends, § 1; Mempa v Rhay, 389 US 128, 133-134). The right to counsel is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be attacked (supra, at 134). But even in criminal proceedings, full-blown evidentiary hearings are not always required. For example, the Second Circuit of the United States Court of Appeals has stated that a court is not under a duty to conduct a full-blown evidentiary hearing in each instance where information in a presentence report is challenged at Federal sentencing proceedings, nor does the convicted defendant have an absolute right to demand that kind of hearing (United States v Lee, 818 F2d 1052, 1056). In Lee, the Second Circuit held it to be sufficient that the defendant was afforded a full opportunity through argument addressed to the court to rebut the Government’s allegations (supra, at 1056).
*966 Similarly, under New York statutory and case law, it is not mandated that a criminal defendant is always entitled to an evidentiary hearing. The “opportunity to be heard” language of due process appeared in New York statutory law for violations of probation under the original Code of Criminal Procedure (Code Crim Pro § 935; People v Oskroba, 305 NY 113, 117). Section 935 of the Code of Criminal Procedure was later superceded by CPL 410.70 (3) where the statute specifically states that the court must conduct a summary hearing and allow the defendant to present evidence on his behalf and cross-examine witnesses.
The language “opportunity to be heard” is still present in CPL 510.20 (2) for applications for recognizance or bail. Similarly, at the time of sentence, a defendant is given an “opportunity to controvert or to comment upon any fact” contained in a presentence report (CPL 400.10 [3]). Even though sentencing is a critical stage of a criminal proceeding (Gardner v Florida, 430 US 349, 358), the full panoply of constitutional rights is not applied to the sentencing process (Williams v New York, 337 US 241). “The key is whether the defendant has been afforded an opportunity to refute those aggravating factors which may have negatively influenced the court” (People v Perry, 36 NY2d 114, 119). It is within the discretion of the court whether or not to hold a hearing on any matter relevant to sentence (CPL 400.10 [3]). In fact, the New York Court of Appeals has held that where an issue is raised concerning the validity of a postplea crime allegedly committed by the defendant prior to sentence or there is a denial of any involvement in the underlying crime, minimal due process does not automatically require an evidentiary hearing (People v Outley, 80 NY2d 702, 713). The court must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation. “The nature and extent of the inquiry — whether through a summary hearing pursuant to CPL 400.10 or some other fair means — is within the court’s discretion” (supra, at 113).
The risk level classification procedure under Correction Law § 168-d for sex offenders receiving probation is more analogous to the due process requirements for sentencing. The statutory procedure for risk level classification allowing the sex offender “to appear and be heard” is more congruent to the language “opportunity to controvert” present in New York sentencing law (CPL 400.10 [3]) and equivalent to the language of notice and “opportunity to be heard” associated with the general due process requirement. Both procedures do not contain statutory *967 language requiring an evidentiary hearing — but leave the nature and extent of the inquiries to the discretion of the court (United, States v Lee, supra; People v Outley, supra).
However, there is a notable distinction between the risk level classification procedure and the sentencing procedure in New York. The risk level classification procedure of Correction Law § 168-d (3) is regulatory in nature and not penal as is the sentencing procedure under CPL 400.10 (Doe v Pataki, 120 F3d 1263, supra). In fact, there is no statutory right to appeal a judicial determination of the risk level classification imposed by the court, and the Court of Appeals has declined to impose one (People v Stevens, 91 NY2d 270, 279 [1998]), while sentences imposed by a court are subject to appeal pursuant to CPL 450.30.
Therefore, the risk level classification procedure has less onerous implications than a sentencing procedure. Accordingly, the defendant should not be entitled to any greater due process rights than the defendant already has at the time of sentence. Concomitantly, any burden of proof to be imposed upon the People at a risk level classification procedure should be no greater than the burden imposed upon the People at the defendant’s time of sentence.
Due process requires that the sentencing court must assure itself that the information on which it bases its sentence is reliable and accurate and the burden of persuasion falls upon the People (see, United States v Lee, supra, at 1056; People v Outley, supra, at 712) in order to ensure that an offender is not being sentenced on the basis of “materially untrue” assumptions or “misinformation” (People v Naranjo, 89 NY2d 1047, 1049). A defendant’s due process rights at sentencing have been satisfied both in Federal and State law by a preponderance of the evidence standard (United States v Lee, supra, at 1057; People v Outley, supra).
Similarly, during the risk level classification procedure, the court may base its decision on the presentence report provided by probation, clinical assessments, victims’ statements, and any materials submitted by the sex offender (Correction Law § 168-d [3]). The court finds that due process requirements impose upon the People the ultimate burden of proving the reliability and accuracy of the information by a preponderance of the evidence in rebutting any allegations made by the sex offender during the proceeding. (See, United States v Lee, supra; see also, People v Outley, supra; People v Naranjo, supra.) If the court is not satisfied with the inquiry, then a summary *968 hearing could be imposed in the court’s discretion allowing defense counsel to present witnesses.
The court is cognizant of the recently published decision Doe v Pataki (3 F Supp 2d 456 [SD NY 1998]), wherein the Honorable Denny Chin of the Federal District Court of the Southern District delineated procedures for the New York State courts to follow in order to comply with due process requirements for risk level classification proceedings pursuant to Correction Law § 168-n involving two classes of individuals. The first class of individuals consists of those convicted sex offenders who were on probation or parole on January 21, 1996, the date the Sex Offender Registration Act took effect. The second class is comprised of individuals who were still incarcerated on January 21,1996 but who have been or will be released from custody and assigned risk level classifications pursuant to Correction Law § 168-n. Judge Chin had imposed an injunction upon the State courts from classifying sex offenders within both of these classes unless the courts comply with the procedures delineated within the decision.
In his decision, Judge Chin held that the procedures established under Correction Law § 168-n failed to meet constitutional due process requirements. A major concern was that some courts were delegating too much authority to the Board of Examiners in the determination process, and sex offenders were not being notified. Section 168-n (1) of the Correction Law provides that the Board of Examiners shall make a recommendation as to the risk level to be assigned to an offender (Correction Law § 168-n [1]). In addition, the sentencing court shall also make a determination with respect to the level of notification (Correction Law § 168-n [3]). The statute raises the issue of what role the court has in the risk level determination pursuant to Correction Law § 168-n. Some lower courts in New York have held that the court serves an administrative function only, and the court must abide by the Board of Examiners’ level recommendations unless the court finds them to be arbitrary and capricious (People v Ross, 169 Misc 2d 308, 312). Whether the court’s function was administrative or not and how much reliance the court should have on a recommendation made by the Board of Examiners was clarified in Doe v Pataki (3 F Supp 2d 456, supra), whereby the court held that an offender is entitled to judicial review of the Board of Examiners’ proposed risk level classification in the form of a hearing before a State court Judge (supra).
The injunction imposed by Judge Chin is inapplicable in the instant case. The defendant in this case is not a part of the *969 designated class opined in Doe v Pataki (supra, at 459), since the defendant was placed on probation by this court after the Sex Offender Registration Act became effective. Further, there is no issue in this defendant’s case as to the court’s role in the risk level assessment process since clearly, under Correction Law § 168-d, it is the function of the court to make the risk level assessment of the offender. There is no recommendation made by the Board of Examiners.
It is worth noting that the risk level assessment procedure established by Judge Chin in Doe v Pataki (3 F Supp 2d 456, supra) imposes a greater burden on the court and the People than that which exists in New York State for a sentence. In that case, Judge Chin required that the sex offender facing risk level classification be given a complete evidentiary hearing by the court, written notice of the hearing, and prehearing discovery of the evidence on which the Board of Examiners’ risk level recommendation is based. Judge Chin places the burden of proof upon the People by clear and convincing evidence, citing E.B. v Verniero (119 F3d 1077 [3d Cir]), which is a great deal higher than the preponderance of the evidence standard required at sentence (United States v Lee, 818 F2d 1052, 1057 [2d Cir], supra). Finally, the court states that the offender must have the right to appeal (Doe v Pataki, supra, at 472).
Risk Level Assessment Procedure
Almost 50 years ago, the United States Supreme Court stated that “[t]he due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. To so treat the due process clause would hinder if not preclude all courts — state and federal— from making progressive efforts to improve the administration of criminal justice” (Williams v New York, 337 US 241, 251 [1949], reh denied 337 US 961 [1949], 338 US 841 [1949]). In keeping with the philosophy set forth in Williams v New York (supra), the court finds that the minimal due process requirements for risk level classification proceedings for an offender receiving probation, pursuant to Correction Law § 168-d, can best be protected by the following procedures:
(1) The offender must be given notice by the court, either orally in open court or in writing, that the court intends to assign a specific risk level based upon the risk factors considered by the court in accordance with the Guidelines prepared by the Board of Examiners (Correction Law § 168-Z). Written notice is *970 not necessary where the defendant is present and can be informed orally on the record in open court.
(2) The court should inform the offender of his right to have counsel present at the proceeding (Correction Law § 168-d [3]).
(3) The offender should be allowed to submit materials to the court and make oral arguments (Correction Law § 168-d [3]).
(4) In preparation for the proceeding, the offender should be allowed to review the presentence report, clinical assessments attached thereto, and any other written material provided to the People or reviewed by the court.
(5) Once the offender controverts any information relied on by the court, the People have the burden to prove, by a preponderance of the evidence (United States v Lee, supra), that the information is reliable and accurate (People v Naranjo, 89 NY2d 1047, supra; People v Outley, 80 NY2d 702, supra).
(6) The court has the discretion to conduct a summary hearing on any controverted fact that is substantial and calls into question the reliability and accuracy of the information presented to the court which provides the basis for the court’s decision.
These were the procedures that this court employed in determining the risk assessment level of the defendant in this case.
Conclusion
On May 11, 1998, the court notified the defendant, in open court, with counsel present, that the court was intending to assign a risk assessment level of 3 using override provision (iv) on the risk assessment instrument. The court informed the defendant that it would allow the defendant to appear and be heard on May 20, 1998 with regard to the risk assessment level determination and that the defendant had the right to have counsel present.
The court had received a presentence report from probation prior to May 11, 1998. Annexed thereto was an evaluation from Ken Cullen, C.S.W., on behalf of CAP Behavior Associates. The clinical evaluation was requested by the Nassau County Probation Department. The clinical assessment contained in the letter from Mr. Cullen dated April 30, 1998 stated that defendant met the full criteria for a diagnosis of pedophilia under Diagnostic and Statistical Manual of Mental Disorders: DSM IV diagnostic code No. 302.2.
The defendant was permitted to review the presentence report and the clinical assessment from CAP Behavior Associ *971 ates in preparation for the risk level assessment proceeding that would take place on May 20, 1998.
In addition, the defendant submitted a letter to the court from the psychologist with whom he was now in therapy.
On May 20, 1998, the defendant appeared with counsel. The court informed the defendant that the risk factors on the risk assessment instrument prepared by the Board of Examiners, pursuant to the Guidelines prepared in accordance with Correction Law § 168-Z, indicated the presumptive risk level to be a level 2 with a total of +80 points. The risk factors were determined as follows:
Sexual contact with victim under clothing +10
Number of victims were two +20
Duration of offense conduct with victim +20
Age of victim between 11 through 16 +20
The defendant had not accepted responsibility +10
However, the court informed the defendant that the court intended to impose a risk level 3 using override provision (iv), to wit: that there has been a clinical assessment that the offender has a psychological, physical, or organic abnormality that decreases ability to control impulsive sexual behavior.
The defendant requested that he be permitted to present testimony to the court from Ken Cullen, C.S.W., who had prepared the clinical assessment report from CAP Behavior Associates. Mr. Cullen was on the committee of a panel of eight experts that made recommendations to the Board of Examiners regarding the Guidelines prepared by the Board of Examiners. The offer of proof made by the defense was that Mr. Cullen’s testimony would not change the diagnosis of the defendant that was contained in his report but would offer insight as to the intent of the Board of Examiners in establishing the Guidelines and that he would testify that it would not be the intent of the Board to impose a risk assessment level of 3 upon a person in defendant’s situation.
The People opposed the testimony of Mr. Cullen upon the ground that the testimony was unnecessary. The People stated that they could also present an expert from the same panel who would state that it was the intent of the Board that the risk assessment level of 3 should be imposed upon a person similarly situated as the defendant.
*972 The court ruled that Mr. Cullen would only be allowed to testify if his testimony would correct a clerical mistake or factual error written in the report submitted to the Probation Department. His testimony would also be permitted if the court felt that there was a need for clarification of Mr. Cullen’s report, or he would change his diagnosis of the defendant. Defense counsel informed the court that Mr. Cullen would not be testifying as to any clerical or factual error in his report or change his diagnosis.
The court finds that Mr. Cullen’s testimony was unnecessary. Mr. Cullen was part of a committee that did not prepare the Guidelines but only made suggestions to the Board of Examiners as to what the Guidelines should contain. Only some of the recommendations by the committee were even considered by the Board of Examiners. In fact, the Board of Examiners did not change the Guidelines which provided that override provision (iv) was to be applied to a clinical assessment of pedophilia (Risk Assessment Guidelines and Commentary, at 17 [Nov. 1997 ed]). The court need not look any further than the Commentary prepared by the Board of Examiners to ascertain its intent. The Commentary from the Board of Examiners states that the clinical assessment of an offender who has a psychological, physical, or organic abnormality that decreases his ability to control impulsive sexual behavior is an override that automatically results in a risk assessment level of 3. The Board of Examiners’ Guidelines specifically stated that such a clinical assessment of pedophilia would support an override.
There is ample information in the possession of the court for a determination of a risk assessment level of 3 to be assigned.
The report from CAP Behavior Associates, written by the proposed defense witness, diagnosed the defendant with pedophilia. The diagnosis is not controverted by the defendant. The diagnostic criteria for pedophilia are listed in the Diagnostic and Statistical Manual of Mental Disorders: DSM IV (diagnostic code No. 302.2, at 527-528). The disorder is chronic involving sexual fantasies and sexual activity with prepubescent children under the age of 13. This diagnosis is buttressed by the presentence report containing the victim impact statements.
None of the information recounted in the presentence report was specifically controverted by defense counsel during oral arguments to the court as to the appropriate risk assessment *973 level to be assigned to the defendant. Nor did the defendant controvert the statements in the presentence report that the defendant had a preoccupation with children and continues to socialize with children in the neighborhood. He was also the soccer coach, baseball coach, and ice skating coach for girls’ teams.
The court was provided with sufficient, reliable, and accurate information to determine the defendant’s risk level allocation as level 3 based upon the oral arguments presented by defense counsel and the People, the victim impact statements provided in the presentence report prepared by the Probation Department, the report from CAP Behavior Associates, the materials submitted by defense counsel, and the Guidelines and Commentary prepared by the Board of Examiners. This determination is based upon override provision (iv) contained in the Risk Assessment Guidelines and Commentary (at 3) — there has been “a clinical assessment that the offender has a psychological * * * abnormality that decreases the ability to control impulsive sexual behavior.” An evidentiary hearing was not necessary. The People have met their burden of proof by a preponderance of the evidence that a risk level of 3 is appropriate and that the information presented to the court is both reliable and accurate. The defendant’s proffered testimony of Mr. Cullen involving the appropriate risk level the court should designate impinges upon the province of the court as the ultimate finder of fact. The court is fully capable of rendering a determination without such assistance nor was there a need for clarification of the clinical assessment made by Mr. Cullen since his report was clear on its face.
Accordingly, the court finds the defendant to be classified as a risk level 3, a sexually violent predator, requiring the full notification procedures warranted by the Sex Offender Registration Act.