OPINION OF THE COURT
Lewis Bart Stone, J.
Bernard Millan pleaded guilty on May 12, 1999, in the United States District Court for the Southern District of New York, to an indictment charging a violation of 18 USC § 2252 (a) (2), a federal class C felony, carrying a potential punishment of more than one-year imprisonment. The indictment charged that “Millan attempted to purchase videotapes depicting child pornography.” The underlying facts indicate that Millan, using a computer, ordered tapes which depicted sex acts involving children ages 5, 6 and 14 years old.[1]
Based upon such conviction, the New York State Board of Examiners of Sex Offenders, acting pursuant to the New York Sex Offender Registration Act (SORA), Correction Law article 6-C, determined that Millan was required to register in New York State as a sex offender, and so notified him on December 7, 2000. Millan has challenged the applicability of SORA to him on the ground that the federal “conviction does not include all of the essential elements of the applicable designated felony as set forth in [SORA].”
SORA requires a person who has been convicted of certain criminal offenses, referred to in SORA as “sexual offenses,” to register as a sex offender in the State of New York. A “sexual offense” is defined by express reference to a list of New York crimes if the conviction was in New York. Under SORA, crimes committed in other jurisdictions (which also imposes a registration requirement) include a conviction under federal law in a federal court in New York. There are two alternate criteria established to determine whether such crime is a “sexual offense” under SORA which requires SORA registration — viz:
*421 1. whether the conviction in the other jurisdiction was “a conviction of an offense * * * which includes all of the essential elements of any such felony provided for in paragraph (a) of this subdivision” (Correction Law § 168-a [2] [b] [paragraph (a) lists the New York offenses requiring registration] [the First Criterion]), or
2. whether the other conviction was a “conviction of a felony in any other jurisdiction * * * for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred. (Correction Law § 168-a [2] [b] [the Second Criterion].)
The People here seek to require Millan to register pursuant to the First Criterion. Millan objects on the ground that the federal conviction does not include “all the elements of the applicable designated felony as set forth in the New York State Correction Law.”
Millan and the People agree that the relevant New York State provision is Penal Law § 263.16, possessing a sexual performance by a child, a class E felony. Penal Law § 263.16 provides that:
“A person is guilty of possessing a sexual performance by a child when, knowing the character and content thereof, he knowingly has in his possession or control any performance which includes sexual conduct by a child less than sixteen years of age.”
The federal crime for which Millan was convicted provides, in pertinent part, that “any person who * * * knowingly receives or distributes * * * any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer [shall be punished as provided in subsection (b) of this statute].” “Child pornography” as defined in this statute requires the person depicted to have been a “minor,” which is defined as any person under the age of 18 years. (18 USC § 2252A [a] [2] [A]; § 2256 [1], [8].)
The differences, Millan argues, are that the federal statute criminalizes possession of images of children under 18 (as distinct from the New York law which criminalizes possession of images of children under 16) and that the federal law requires that the offense be committed by the use of the mails or other shipment or transport in interstate commerce, including by computer (as distinct from the New York law which contains no such requirement).
The second objection is, upon analysis, almost frivolous. The requirement for an instrumentality of interstate commerce *422 in the federal law provides the jurisdictional basis for federal action and legislation. The implied correlative in New York law is that for a conviction under Penal Law § 263.16, the possession would have to have been in New York. Any jury instruction charging a violation of Penal Law § 263.16 would, in New York, have to include, as an element of a crime charging possession, that the crime was committed in the county in which the possession occurred. Yet, to claim that the absence of such jurisdictional requirement where the crime was not committed in New York means that such crime did not have the same essential elements of a New York crime, cannot be serious if the SORA provisions, which consider how crimes in other jurisdictions are to be considered in a SORA registration, are to have any meaning. Here, the claim that the federal jurisdictional predicate somehow by itself excludes Millan’s federal crime from inclusion under SORA is even weaker. First, in fact, Millan was in New York County when he attempted to acquire the videotapes, and second, the jurisdictional requirement is for the federal crime, in addition to all other elements, and not in substitution therefor. While an essential element necessary for a conviction in New York missing in the federal prosecution would bar a conviction in such proceeding from consideration under SORA, an additional element should not. In the former case, there would be no basis to believe an analogous crime had been committed; in the latter case, there would only be a possibility that some persons who might have been convicted in New York would not be convicted under the federal statute which requires additional elements to be proven for conviction.
It is thus clear that “essential elements” cannot be derived from a mechanical parsing, but must be considered by applying appropriate standards of statutory construction.
In the recent case of Matter of Nadel (188 Misc 2d 427 [Sup Ct, NY County 2001]), Justice Richter considered a case quite similar to this one. Nadel involved the same federal offense. In Nadel, Justice Richter applied the essential elements test to find that the age of the minor set forth in respective federal statutes (18) and state statute (16) to be essential elements of the definition of the crime, and found that because the federal statute criminalized attempted possession of images of children under 18 years of age, and the New York statute criminalized attempted possession of images of children under 16 years of age, Nadel’s conviction under federal law did not require SORA registration.
While the result in Nadel, based on the facts in the record and available to the Nadel court, may not have required Mr. *423 Nadel to register, this court does not concur with the reasoning and conclusions of the Nadel court as to how to construe the term “essential elements” under SORA and how to apply such standard to Mr. Millan.
SORA (Correction Law art 6-C, §§ 168-a — 168-v) became effective on January 21, 1996. It imposed a notification and registration requirement on individuals convicted of certain sex offenses. Such individuals are to be classified into one of three levels which level then triggers a particular mode of community notification. SORA followed the adoption of similar laws in New Jersey and elsewhere, sometimes called Megan’s Laws, in remembrance of Megan Kanka, a young girl who was murdered by a felon who had been convicted of a sexual felony, served his time and who, after his release, resided in the victim’s neighborhood.
After its enactment in 1995, SORA was challenged on numerous grounds. State and federal courts in New York have reviewed the constitutional implications of SORA, including ex post facto prohibition, double jeopardy and other due process rights, and, with minor exceptions not relevant here, have come to the conclusion that the registration requirements of SORA are valid. The courts examined the Act’s legislative intent, purpose, design, history and effects, among other tests, in order to determine whether SORA could pass constitutional muster.
The courts first asked whether SORA was remedial or punitive. In examining the legislative findings, courts reviewing SORA make note of the express legislative intent of SORA set forth in the statute itself:
“The legislature finds that the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, and that the protection of the public from these offenders is of paramount concern or interest to government. The legislature further finds that law enforcement agencies’ efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the lack of information about sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend and prosecute sex offenders.
*424 “The system of registering sex offenders is a proper exercise of the state’s police power regulating present and ongoing conduct. Registration will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community.
“Persons found to have committed a sex offense have a reduced expectation of privacy because of the public’s interest in safety and in the effective operation of government. In balancing [offenders’] due process and other rights, and the interests of public security, the legislature finds that releasing information about sex offenders to law enforcement agencies and, under certain circumstances, providing access to limited information about certain sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm.
“Therefore, this state’s policy, which will bring the state into compliance with the federal crime control act 42 U.S.C. 170101, is to assist the local law enforcement agencies’ efforts to protect their communities by requiring sex offenders to register and to authorize the release of necessary and relevant information about certain sex offenders to the public in this act.” (L 1995, ch 192, § 1, reprinted in McKinney’s Cons Laws of NY, Book 10B, following Correction Law § 168.)
Based in part on this express legislative statement, the New York State courts have almost uniformly held that the laws requiring registration of sex offenders are remedial and therefore constitutional. In most cases, the courts have found SORA does not violate double jeopardy rights or the Ex Post Facto Clause. “ [Requirements for notification and registration * * * are civil and remedial and do not constitute punishment * * * [Megan’s Law was] adopted as a remedial measure to ameliorate the danger to the public caused by the release of sex offenders [and does] not violate petitioner’s [double jeopardy] rights.” (Matter of M.G. v Travis, 236 AD2d 163, 166 [1st Dept 1997] [emphasis supplied].)
*425 In People v Afrika (168 Misc 2d 618, 622-623 [Sup Ct, Monroe County 1996]), the court stated, “The aforesaid preamble [of legislative purpose] evinces an unmistakable intent to promote public safety and enhance law enforcement efforts by providing for the accumulation and dissemination of pertinent information regarding dangerous sex offenders. Nevertheless, the Legislature’s proclamation as to its remedial intent is not dis-positive, as noble rhetoric or ‘civil label’ may mask a lurking punitive purpose.” That court then looked at the “overall design” of the Act and attempted to ferret out any “secret agenda.” It found it was not excessive in its reach or burdens; it held it to be a measured response to a perceived danger and also reached the conclusion that the notification scheme did not violate constitutional protections. “SORA unquestionably passes muster as a remedial law, since the burdens that are imposed were occasioned by bona fide governmental concerns regarding the peril presented to the public by known sexual predators who are at liberty.” (Afrika, supra, at 626; see also, People v Cropper, 170 Misc 2d 631 [Sup Ct, Monroe County 1996]; People v Roe, 177 Misc 2d 960 [Nassau County Ct 1998].)
The seminal federal case involving review of the New York Act is Doe v Pataki (940 F Supp 603 [SD NY 1996]). In this case, the District Court held that although registration of sex offenders was a ministerial act and did not violate constitutional protections, the notification scheme (as originally enacted in 1995) was punitive and therefore constitutionally impermissible when applied retroactively (i.e., to offenses committed prior to the 1995 Act).
However, in affirming in part and reversing in part, the Second Circuit concluded that: “the legislature’s intent in enacting these provisions was nonpunitive and that the text and structure of the Act bear out its prospective, regulatory goals.” (Doe v Pataki, 120 F3d 1263, 1284 [2d Cir 1997].) That court held that “neither the registration nor the notification provisions of the Act constitute ‘punishment’ for the purposes of the Ex Post Facto Clause, and that both sets of provisions may be imposed upon the offenders convicted before the Act’s effective date.” (Doe v Pataki, 120 F3d 1263, 1265.)[2] SORA was amended in 1999 in order to impose additional due process *426 requirements for the protection of registrants and potential registrants.
Courts of other jurisdictions have similarly held that requirements of Megan’s Laws of other states did not amount to punishment and could be legitimately considered remedial. (See Doe v Weld, 954 F Supp 425 [D Mass 1996].) Doe v Poritz (142 NJ 1, 662 A2d 367 [1995]) held the New Jersey Megan’s Law to be remedial and not punitive, notwithstanding the fact that its remedial provisions have a deterrent impact. “[A] statute that can fairly be characterized as remedial, both in its purpose and implementing provisions, does not constitute punishment even though its remedial provisions have some inevitable deterrent impact, and even though it may indirectly and adversely affect, potentially severely, some of those subject to its provisions. Such a law does not become punitive simply because its impact, in part, may be punitive unless the only explanation for that impact is a punitive purpose: an intent to punish.” (Doe v Poritz, 142 NJ at 43, 662 A2d at 388.) Doe v Poritz rejected the theory that the fact that a law is responsive to a person’s prior criminal conduct makes it punitive. The court agreed with the Legislature: that sex offenders’ past behavior is a strong predictor of future conduct. (See also Artway v Attorney General of State of N. J., 81 F3d 1235 [3d Cir 1996]; Doe v Kelley, 961 F Supp 1105 [WD Mich 1997].)
Since SORA is unquestionably a remedial, or civil, statute, this court must apply appropriate construction to the “essential elements” test.
Remedial statutes are those which are made to supply some defect or abridge some superfluity in the former law, or which supply a remedy where none previously existed. (McKinney’s Cons Laws of NY, Book 1, Statutes § 321.) Remedial statutes are also referred to as statutes “designed to correct imperfections in prior law by generally giving relief to the aggrieved party.” (97 NY Jur 2d, Statutes § 10 [1992], citing Matter of Asman v Ambach, 64 NY2d 989 [1985].)
Generally speaking, remedial statutes meet with judicial approval and are to be liberally construed to spread their beneficial results as widely as possible. (Matter of Mittleman, 282 App Div 587 [1953]; Ancona v Metcalf, 120 Misc 2d 51; see also People ex rel. Kaminstein v Brooklyn State Hosp., 49 Misc 2d 57 [1966].) A liberal construction of such statutes is one which *427 is in the interest of those whose rights are to be protected, and if a case is within the beneficial intention of a remedial act, it is deemed within the statute, though not actually within the letter of the law.
While a remedial statute is construed with greater liberality than is allowed with reference to a penal statute, it is nevertheless to receive a reasonable interpretation with a view of accomplishing the purpose intended. (Matter of Anderlohr v City of New York, 201 Misc 605, 607 [1952].) The court may take a liberal view towards the application of the registration legislation so as to spread its beneficial results as widely as possible and to ensure its application to as many convicted persons as possible. (Matter of Mlodozeniec v Worthington Corp., 9 AD2d 21.)
Thus, as a remedial, rather than a penal, statute, the essential elements test under SORA should be liberally construed to accomplish the express intent of the New York Legislature. In this way, this court rejects the conclusion of the Nadel court that the essential elements test should be strictly construed, because the same words are strictly construed in the context of applying predicate felony statutes, where such statutes, being penal, are properly strictly construed.
The legislative history cited by Nadel supports a liberal construction, rather than a strict construction, as urged by such court. First, the legislative findings are a clear statement of the intent of the Legislature, which must, absent constitutional questions or patent absurdity, bind the courts. Guidance for rules of construction may be found in these provisions and construction which carries out such intent is proper. To engraft a strict construction rule on a nonpenal statute, absent a compelling reason, flies in the face of the legislative intent.
As the Nadel court notes (at 438), it was not unmindful that “a strict application of the ‘essential elements’ test may limit the number of convicted offenders who must register and therefore may be inconsistent with the spirit of [SORA].” It is the very spirit of SORA that should be followed, if not otherwise inappropriate, in construing a remedial statute such as SORA.
Applying this “strict application,” the Nadel court held that the elements of the out-of-state conviction had to be “virtually identical” and that it could not consider the factual allegations in the indictment or the evidence at trial when considering whether the New York crime contained comparable “essential elements.” However, New York courts have found that even *428 where the essential demands test is applied in a criminal statute context, such a rule is not hard and fast. For example, the First, Second and Fourth Departments have found it permissible to review the accusatory instrument of the out-of-state conviction on a factual basis to determine whether the out-of-state acts would have constituted felonious behavior in New York. (People v Gonzalez, 61 NY2d 586 [1984] [examining the accusatory instrument when the state statute proscribes conduct that includes felonies and misdemeanors]; People v Butler, 169 AD2d 246 [4th Dept 1991] [Ohio burglary statute used term “unoccupied structure,” New York statute used word “building”; if Ohio statute is broader than New York statute, then Court can look to indictment to determine what specific place defendant is accused and convicted of entering]; People v Adams, 164 AD2d 546 [2d Dept 1991] [where Canadian burglary statute was broader than New York, Court could examine Canadian accusatory instrument in order to determine that defendant broke into a jewelry store]; People v Armstrong, 167 AD2d 108 [1st Dept 1990] [allegations of accusatory instrument can be considered when a foreign statute renders criminal several acts, some which would constitute felonies and other misdemeanors had they occurred in New York; New Jersey statute required theft of $500 to $75,000; New York statute required more than $250]; see also People v Ross, 140 AD2d 555 [2d Dept 1988].)
To the extent there is no absolute limit to inquiry that may be made into the underlying facts, where an essential elements test is imposed under a penal statute, a fortiori, there is no absolute limit to such inquiry in the civil context; in fact, following the legislative intent, there should be no restriction at all, provided that such inquiry is carried out in an appropriate manner in accordance with the law, and as to accord the putative registrant proper procedural due process.
It is therefore the holding of this court that this court may take into account reliable, admissible evidence to determine whether the defendant’s conviction on the federal crime contains the “essential elements” of New York crime and that in this civil context, “essential elements” means no more than that behavior which was in fact found to be criminal in the non-New York case would have been criminal under the relevant New York statute.
The court has reviewed documents from Millan’s case from the United States District Court for the Southern District of New York, including copies of the indictment and authenticated *429 copies of the presentence investigation report. The latter was prepared by a United States Probation Officer for the Honorable Allen G. Schwartz, United States District Judge of the Southern District of New York, after defendant’s plea and before imposition of sentence. This report contains several types of documents, including an analysis of the crime committed by the defendant and the sentencing options and recommendations of the Government, as well as copies of the e-mail communications between the defendant and the undercover postal agent who posed as a seller of pornographic videotapes and communicated with the defendant regarding the defendant’s purchase of these videotapes. The e-mails between the defendant and the agent contain information regarding the age of the minors in tapes the defendant attempted to purchase. Specifically, the tapes ordered by defendant were to contain pornographic depictions of 5 or 6 year olds, 11 year olds, or 14 year olds.[3]
This document is accepted by this court under the common-law hearsay exception for public records. (See CPLR 4520; see also Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4520:2, Common Law Hearsay Exception for Public Records [the court may accept the “presumed reliability inherent in the recording of events by public employees acting in the regular course of public duty”].) This court may receive an authenticated document and take judicial notice of the authenticity of the document with a proper official seal or signature affixed by an officer of the Federal Government. (See Briedis v Village of Tuxedo Park, 156 AD2d 744, lv denied 78 NY2d 852; see also Prince, Richardson on Evidence § 9-201 [Farrell 11th ed].) Millan offered no evidence to the contrary or otherwise challenged the presentence investigation report.
Therefore, based upon the available, reliable and admissible facts of defendant’s federal conviction, this court finds that the defendant was convicted of a felony which contains the essential elements of a New York felony, and he must register as a sex offender under SORA.

. United States v Millan, US Dist Ct, SD NY, Schwartz, J., 98 CR 1346-01 (AGS).

. On May 7, 1998 Judge Denny Chin issued an opinion in a class action suit which held that the procedures for determining the duration of registration and the level of notification do not satisfy due process. The court enjoined the state from classifying sex offenders who committed their crimes prior to the Act’s effective date at higher than level one unless they are reclassified *426 by a court in accordance with procedures set forth in the opinion (3 F Supp 2d 456 [SD NY 1998]).

. Unlike in the Nadel case, the presentence report here sets forth the children’s ages.